UNITED STATES of America, Appellee,

v.

Ruben ORTIZ, a/k/a Ruben Ortiz De Jesus, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Felix NUNEZ, a/k/a Felix Nunez Molina, Defendant, Appellant.

Nos. 91–1974, 91–1975.

United States Court of Appeals,
First Circuit.

Heard May 4, 1992.

Decided June 10, 1992.

Rehearing and Rehearing En Banc Denied July 21, 1992.

See also 771 F.Supp. 499.

at 222, 225–226.

Luis F. Abreu Elias, with whom Fernando J. Carlo, Hato Rey, P.R., was on brief, for defendant, appellant Felix Nunez.

Rachel Brill, Asst. Federal Public Defender, with whom Benicio Sanchez Rivera, Federal Public Defender, San Juan, P.R., was on brief, for appellant Ruben Ortiz.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., and Jeanette Mercado-Rios, Asst. U.S. Atty., San Juan, P.R., were on brief, for U.S.

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

SELYA, Circuit Judge.

Defendants Felix Nunez Molina (Nunez) and Ruben Ortiz De Jesus (Ortiz) were convicted of aiding and abetting a drug-trafficking operation. Both men appeal. We affirm their convictions but remand for resentencing as to Nunez.

## I. BACKGROUND

We summarize the relevant events, interpreting the record in the light most helpful to the government. *See United States v. Maraj*, 947 F.2d 520, 522 (1st Cir.1991).

On February 19, 1991, a federal Drug Enforcement Administration (DEA) agent, Roberto Izquierdo, using a confidential informant (CI) as a conduit, arranged to buy a half kilo of cocaine from Ernesto Llanos Domenech (Llanos). The men were to meet in front of a local bank. When Llanos arrived, he asked Izquierdo and the CI to come to his house. They refused. Llanos then left to retrieve the cocaine, promising to meet his prospective customer later that evening in a parking area adjacent to a fast-food restaurant.

Unbeknownst to Llanos, he was placed under surveillance at that time. On the way home, Llanos flagged down a passing car operated by Nunez. The two men spoke. They then proceeded to Llanos' house, each driving his own automobile.

After a brief respite, the pair drove to the restaurant in Llanos' car. Llanos was behind the wheel; Nunez was ensconced in the right front seat. When Llanos' car stopped, Izquierdo and the CI (who was wearing a body wire) approached the open window on the passenger's side. They began to rehash the terms of the deal with Llanos, speaking across Nunez. Llanos

said that he had brought a package containing a kilogram of cocaine. Izquierdo protested that this was double the amount he had agreed to purchase. Llanos then told the agent that he and Nunez would repair to his house, cut the drug, reweigh it, and return with a half kilogram. During this conversation, Nunez confirmed that he and Llanos would have to reduce, recalibrate, and repackage the contraband. The sellers drove away.

Llanos returned to the restaurant's parking area later that evening, accompanied by Nunez's brother-in-law, defendant Ortiz. An opaque plastic sack lay in the front seat between the two men. Izquierdo approached the vehicle on the driver's side and began discussing the purchase with Llanos. Llanos grabbed the sack, removed a transparent bag of cocaine, and displayed it. After inspecting the bag's contents and engaging in a brief conversation about the previously negotiated sale, Izquierdo left to get the money. At this juncture, the trap snapped shut. DEA agents arrested Llanos and Ortiz. A pat-down search revealed that Ortiz was carrying a beeper.

Nunez and Ortiz were charged with aiding and abetting Llanos' intended cocaine distribution. *See* 21 U.S.C. § 841(a)(1) (1982); 18 U.S.C. § 2 (1988). Llanos was charged as a principal and pled guilty. His alleged myrmidons were tried together and convicted.

## II. SUFFICIENCY OF THE EVIDENCE

First and foremost, the appellants strive to convince us that the evidence was insufficient to sustain the jury verdict. We are not persuaded.

### A. *Standard of Review.*

■ In assessing a sufficiency challenge, we examine the evidence in the light most flattering to the prosecution (in the process drawing all reasonable inferences in its favor) so that we may ascertain

whether the proof would have allowed a rational jury to determine beyond a reasonable doubt that the defendant was guilty of the crime charged.[1] *See Maraj,* 947 F.2d at 522–23; *United States v. Vargas,* 945 F.2d 426, 427–28 (1st Cir.1991); *United States v. Victoria–Peguero,* 920 F.2d 77, 86–87 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991). In this analysis, no premium is placed upon direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction. *See Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *Maraj,* 947 F.2d at 523. Moreover, juries are not required to examine the evidence in isolation, for "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." *Bourjaily v. United States,* 483 U.S. 171, 179–80, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

■ On appeal, it is not the appellate court's function to weigh the evidence or make credibility judgments. *Maraj,* 947 F.2d at 523. Rather, it is for the jury to choose between varying interpretations of the evidence. It follows inexorably that the court of appeals ought not disturb, on the ground of insufficient evidence, a jury verdict that is supported by a plausible rendition of the record. *See United States v. Quejada–Zurique,* 708 F.2d 857, 859 (1st Cir.), *cert. denied,* 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983); *United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983).

### B. *Mere Presence: "Point of Sale" Cases.*

■ Despite the prosecution-friendly overtones of the standard of review, appellate oversight of sufficiency challenges is

---

1. The indictment charged Nunez and Ortiz with aiding and abetting Llanos' drug trafficking. Thus, the government had the burden of proving that the defendants associated themselves with the commission of the substantive crimes, participated in them as something they wished to bring about, and sought by their actions to make the crimes succeed. *See Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *United States v. Lema,* 909 F.2d 561, 569 (1st Cir.1990); *United States v. Clotida,* 892 F.2d 1098, 1103–04 (1st Cir.1989).

not an empty ritual. This case, in which Ortiz and Nunez both claim they were merely present at the scene of Llanos' crime and, therefore, the evidence against them was inadequate, presents a paradigmatic example of the sort of problems that can surface. On the one hand, "[m]ere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting." *United States v. Francomano,* 554 F.2d 483, 486 (1st Cir.1977) (citations omitted); accord *United States v. Clotida,* 892 F.2d 1098, 1104–05 (1st Cir.1989). On the other hand, "there are circumstances where presence itself implies participation—as where a 250–pound bruiser stands silently by during an extortion attempt, or a companion stands by during a robbery, ready to sound a warning or give other aid if required." *United States v. Martinez,* 479 F.2d 824, 829 (1st Cir.1973); *accord United States v. Garguilo,* 310 F.2d 249, 253 (2d Cir.1962). In sum, the line that separates mere presence from culpable presence is a thin one, often difficult to plot.

We think it is important that this case does not involve a claim of mere presence in regard to, say, a seaman aboard a large vessel transporting drugs, *cf. United States v. Mehtala,* 578 F.2d 6 (1st Cir.1978), or an occupier of a multi-occupant dwelling where drugs are stored, *cf. United States v. Ocampo,* 964 F.2d 80 (1st Cir.1992). In situations involving primarily transport or storage, the possibility that an innocent bystander can be on the scene is significantly greater than in a situation where a person is brought to a neutral site by a drug trafficker preliminary to the actual consummation of a narcotics transaction.

■ Some general principles help us to establish this distinction. When assessing sufficiency challenges in criminal cases, we have remarked, time and again, that fact-finders may draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings. Thus, jurors are neither required to divorce themselves from their common sense nor to abandon the dictates of mature experience. *See Vargas,* 945 F.2d at 429; *Smith,* 680 F.2d at 260; *see also United States v. Ingraham,* 832 F.2d 229, 240 (1st Cir.1987) ("The law is not so struthious as to compel a criminal jury to ignore that which is perfectly obvious."), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). Jurors can be assumed to know that criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences. *See United States v. Batista–Polanco,* 927 F.2d 14, 18 (1st Cir.1991); *United States v. Cuevas–Esquivel,* 905 F.2d 510, 515 (1st Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990); *United States v. Beltran,* 761 F.2d 1, 6 (1st Cir.1985); *Quejada–Zurique,* 708 F.2d at 861. Indeed, we held some years ago, on facts highly analogous to those in the instant record, that the "jury could have inferred that, had Appellant been a mere bystander, he would not have joined the two agents and [the principal] in the privacy of the car while the terms of the sale were further discussed." *Martinez,* 479 F.2d at 829.

In short, when the evidence shows a defendant arriving at the scene of a prearranged drug deal accompanied by, and with the contrivance of, a principal, the most closely applicable precedents are not the cases involving presence during the transport or storage of drugs, but those involving presence at the point of sale. *See, e.g., United States v. Lema,* 909 F.2d 561, 569–71 (1st Cir.1990); *United States v. Paone,* 758 F.2d 774, 776 (1st Cir.1985); *Martinez,* 479 F.2d at 829. The cases before us fall into the point-of-sale category.[2]

C. *The Evidence Against Nunez.*

■ In our estimation, the government's case against Nunez passes muster. Before

---

2. Of course, the planned sale was temporarily sidetracked after Nunez accompanied Llanos to the restaurant. Yet, the evidence is undisputed that Llanos' intention was to sell cocaine at that meeting. We think it is appropriate, therefore, to treat Nunez's case as a point-of-sale situation.

Llanos appeared in the parking lot with Nunez in tow, he spoke with Izquierdo and established a time and place for drugs to be dealt. He mentioned that he had to find his "buddy." From the evidence of subsequent events, the jury could have believed Llanos thereafter cruised the streets until he found Nunez and waved him down. Nunez followed Llanos home, conversed with him, and accompanied him to the parking lot. Once there, Nunez not only listened to the dialogue between buyer and seller but also participated in it, reiterating what Llanos had said earlier: that the drug had to be reworked to effectuate the sale. Although this factual mosaic does not compel a conviction, it adequately supports one.

■ To be sure, Nunez denies that he remarked the need to cut and reweigh the cocaine. He asserts that since the comment does not appear on the tape recording of the conversation and the trial judge, in denying Nunez's motion for acquittal, acknowledged that Nunez arguably remained silent during the meeting, it was impermissible for the jury to give credence to Izquierdo's testimony about the statement.[3] But, the cases are legion to the effect that, when a jury is presented with conflicting factual statements, the resolution of the conflict, and any concomitant credibility calls, are uniquely within the jury's province. *See, e.g., Maraj*, 947 F.2d at 523; *Batista–Polanco*, 927 F.2d at 17; *Cuevas-Esquivel*, 905 F.2d at 514. Moreover, the triable issue in this case involved the contents of the conversation between Izquierdo and Nunez, not the contents of the tape. The law imposes no requirement that the government rely on a tape recording to prove what was said during a discussion, for a participant's testimony on that subject can itself constitute admissible proof. *See United States v. Howard*, 953 F.2d 610, 612–13 (11th Cir.1992) (per curiam); *United States v. White*, 223 F.2d 674, 675 (2d Cir.), *cert. denied*, 350 U.S. 888, 76 S.Ct. 143, 100 L.Ed. 782 (1955). Hence, when there is some variance between what

a tape recording contains and what a participant recalls, the jury is the proper arbiter as to the significance of the variance and the credibility of the participant's testimony. *See United States v. Chaudhry*, 850 F.2d 851, 857 (1st Cir.1988). In a nutshell, the fact that Nunez's statement was not captured on tape was grist for the jury's mill—but it did not foreclose either the admissibility of the evidence or the jury's right to rely on it.

■ By the same token, the jury's factfinding mission is not aborted simply because the judge, had he been presiding at a bench trial, might have found the facts differently. *See United States v. Pitocchelli*, 830 F.2d 401, 403 (1st Cir.1987); *cf. United States v. Rothrock*, 806 F.2d 318, 322 (1st Cir.1986). The key is whether the jury's decipherment of the record represented a plausible choice among reasonable alternatives, all things considered. In this instance, the judge, despite his articulated doubt about what Nunez said, saw no reason to set aside the verdict. Nor do we.

### D. *The Evidence Against Ortiz.*

■ The case against Ortiz is, admittedly, a bit thinner. Unlike Nunez, Ortiz remained silent during the transaction. Nonetheless, silence does not establish innocence, *Martinez*, 479 F.2d at 829, and the proof as a whole strikes us as sufficient to support Ortiz's conviction.

■ For one thing, the evidence established that Ortiz and Nunez were brothers-in-law. While innocent association with those involved in illegal activities can never form the sole basis for a conviction, *see United States v. Johnson*, 952 F.2d 565, 574 (1st Cir.1991), *petition for cert. filed*, 60 U.S.L.W. 3784 (April 28, 1992), the existence of a close relationship between a defendant and others involved in criminal activity can, as a part of a larger package of proof, assist in supporting an inference of involvement in illicit activity. *See Nye &*

---

**3.** The testimony was blunt and unambiguous. Izquierdo, a percipient witness, testified specifically that Nunez "told me that they have to go and weigh the package so I have my complete half of the cocaine and pack the—in a plastic bag, wrap it around in a plastic bag or whatever the wrapping will be and to weigh it and pack the cocaine and deliver my half kilo of cocaine."

*Nissen,* 336 U.S. at 619, 69 S.Ct. at 770; *Cuevas–Esquivel,* 905 F.2d at 515; *United States v. Robinson,* 843 F.2d 1, 8 (1st Cir.), *cert. denied,* 488 U.S. 834, 109 S.Ct. 93, 102 L.Ed.2d 69 (1988); *see also Francomano,* 554 F.2d at 487 ("Doubtless the intimacy of association ... is a factor which, with others, could rather quickly add up to circumstantial proof of guilty knowledge....").

■ For another thing, the government presented evidence that Ortiz was carrying a telephone beeper at the time of his arrest. Although possession of a beeper is not *ipso facto* proof of complicity in the drug trade, *United States v. Duarte,* 950 F.2d 1255, 1260 n. 4 (7th Cir.1991), possession of such an item—on a defendant's person at the scene of an ongoing drug deal—"could justifiably raise the eyebrows of a reasonable jury" when viewed in light of the totality of the evidence. *Id.* at 1260 & n. 4; *accord United States v. Solis,* 923 F.2d 548, 550–51 & n. 4 (7th Cir.1991); *United States v. Rogers,* 918 F.2d 207, 212–13 (D.C.Cir.1990); *United States v. Roldan–Zapata,* 916 F.2d 795, 800 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991); *United States v. Sanchez Solis,* 882 F.2d 693, 696 (2d Cir. 1989); *United States v. Ginsberg,* 758 F.2d 823, 829 (2d Cir.1985). This sort of inference takes on added cogency in the context of a challenge to evidentiary sufficiency, where a court must construe the evidence and all reasonable inferences therefrom in favor of the government. *See Duarte,* 950 F.2d at 1260 n. 4; *cf. Ocampo,* 964 F.2d at 81–83 [slip op. at 3–7] (a beeper in a home occupied by a defendant and others, not found on defendant's person, will not support a comparable inference).

Last but not least, Llanos, anticipating that a prearranged drug deal would be consummated, appears purposefully to have brought Ortiz with him to the point of sale. Ortiz, for his part, appears to have come willingly. The bag containing the contraband was in plain view between the two men. Seen in that perspective, the claim of mere presence has the hollow ring of sloganeering. Here, Ortiz's presence patently implied participation.

Ortiz argues vociferously that all the evidence can be explained in a manner perfectly consistent with innocent activity. That argument misses the point. "The fact that [a defendant's] acts appeared not to be illegal when viewed in isolation does not bar his conviction." *United States v. LaChance,* 817 F.2d 1491, 1494 (11th Cir.), *cert. denied,* 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987); *see also United States v. Cintolo,* 818 F.2d 980, 991–93 (1st Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987). In the final analysis, the government's proof at trial "need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Victoria–Peguero,* 920 F.2d at 86–87; *accord Ingraham,* 832 F.2d at 239–40; *United States v. Guerrero-Guerrero,* 776 F.2d 1071, 1075 (1st Cir. 1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). We conclude that the evidence adduced against Ortiz, although perhaps verging toward the margin, was adequate to satisfy this benchmark.[4]

## III.   OTHER ALLEGED TRIAL ERRORS

Nunez claims that, apart from sufficiency of the evidence, the jury verdict was also tainted by two other errors. Ortiz joins in the first of these asseverations.

### A.   *The Petrozziello Claim.*

Both appellants contend that the district court committed reversible error in failing to conduct a hearing according to the mandate of *United States v. Petrozziello,* 548 F.2d 20 (1st Cir.1977). We set the stage.

■ Federal Rule of Evidence 801(d)(2)(E) excludes from the operation of the hearsay rule "a statement by a coconspirator of a party during the course and in

---

4. In *Paone,* 758 F.2d at 776, we said in dictum that, "if [a defendant's] only contact with the transaction had been his presence in the back seat of [a] car when [the principal] handed over the ... cocaine," a mere presence defense might be quite persuasive. We think there is more to the present case than that statement contemplated.

furtherance of the conspiracy." It is not necessary for the indictment to charge a conspiracy in order to admit coconspirators' statements under Rule 801(d)(2)(E). *United States v. Campa,* 679 F.2d 1006, 1011 (1st Cir.1982). Whether or not a conspiracy has been charged, such statements are admissible if the district court finds that "it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Petrozziello,* 548 F.2d at 23; *accord Bourjaily,* 483 U.S. at 175, 107 S.Ct. at 2778. In this circuit, the district court's ultimate finding on such a matter has come to be called a *"Petrozziello* determination."

The proper procedure for admitting or rejecting coconspirator statements is set forth in *United States v. Ciampaglia,* 628 F.2d 632, 638 (1st Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980). Among other things, the pavane choreographed in *Ciampaglia* requires that the district court make its *Petrozziello* determination "at the close of all the evidence." *Id.* It is settled, however, that a "defendant's failure to object to the omission of such an express trial-end determination bars him from raising the point on appeal in the absence of plain error." *United States v. Perkins,* 926 F.2d 1271, 1283 (1st Cir.1991).

In the case at hand, Nunez argued prior to trial that certain out-of-court statements made by Llanos should not be allowed into evidence. He renewed this objection in the midst of the government's case in chief and after the jury returned its verdict. Ortiz also objected. The district court overruled the objections. Moreover, in responding to the mid-trial objection, the judge stated: "you don't have to have [a

*Petrozziello* determination] during trial. The thing is that the Government will make a proffer. If the Government does not show that it was a part of the conspiracy then it's [inadmissible].... So at the end of the trial, I have to make a ruling." In fact, the district court never made a formal *Petrozziello* determination. Appellants contend that this lapse constituted reversible error. We disagree.

In our view, *Perkins* controls. We think it is disingenuous to say that the breaking of the district court's implied promise to make a trial-end determination, without more, obviated the need for the defendants to lodge an objection at the proper time. Trial judges are the foot soldiers of the judiciary. Figuratively speaking, bullets fly in every direction during a heated trial. The judge cannot be expected to keep track of every deflected shot or to trace the course of every ricochet. To the contrary, the attorneys must usually bear the responsibility for preserving their points. Thus, we have held squarely that "a party who seeks a ruling must persist in his quest to some reasonable extent. If the court postpones action, the proponent must ordinarily call the matter to the court's attention at [the appropriate] later point in the trial if he is to preserve his rights." *DesRosiers v. Moran,* 949 F.2d 15, 23 (1st Cir.1991). There is nothing about this case that blunts the force of the *DesRosiers* principle.

For *Petrozziello* purposes, the critical juncture is the close of all the evidence. Here, that juncture went unremarked. The appellants failed either to offer a timely objection or to remind the judge of his earlier allusion to making a ruling. Under such circumstances, we can vacate the defendants' convictions on this ground only if the record reveals plain error.[5] *See Per-*

---

5. In *United States v. Machor,* 879 F.2d 945, 949–51 (1st Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990), we stated that when a defendant objects to the admissibility of coconspirators' statements offered at trial, but fails specifically to request a *Petrozziello* determination or renew his objection at the close of all the evidence, "there will be no reversible error if an examination of the record

reveals that the trial court acknowledged that a Fed.R.Evid. 801(d)(2)(E) problem existed and considered the issue, provided, of course, that the government has met its burden of proof under *Petrozziello.*" *Id.* at 951 (citations omitted). This standard was met here; the lower court adequately considered the Rule 801(d)(2)(E) problem in denying appellants' post-trial motions for judgment of acquittal and

kins, 926 F.2d at 1283; see also United States v. Griffin, 818 F.2d 97, 99–100 (1st Cir.), cert. denied, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); Fed.R.Crim.P. 52(b). No such error is apparent in this case.

We need not tarry over this point. Our disposition of the appellants' sufficiency claims, see supra Parts II(C), (D), necessarily adumbrates our disposition of their Petrozziello challenge. It suffices to say that enough evidence existed to support a finding, based on a preponderance of the evidence, that Nunez, Ortiz, and Llanos were colloguing together to distribute cocaine during the time frame when Llanos' out-of-court statements in furtherance of the conspiracy were made. Cf., e.g., United States v. Gomez–Pabon, 911 F.2d 847, 856 (1st Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991). There was no plain error in admitting Llanos' statements under Fed.R.Evid. 801(d)(2)(E).

### B. Authentication.

■ In a last-ditch effort to avoid the inevitable, Nunez argues that the district court erred in allowing into evidence the cocaine seized at the point of sale. He claims that the government never adequately authenticated the contraband. This sally has as little support in the facts as it does in the governing law.

■ We start with bedrock. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R.Evid. 901(a). The rule does not erect a particularly high hurdle. "If in the court's judgment it seems reasonably probable that the evidence is what it purports to be, the command of Rule 901(a) is satisfied, and the evidence's persuasive force is left to the jury." United States v. Ladd, 885

F.2d 954, 956 (1st Cir.1989); accord United States v. Mahecha–Onofre, 936 F.2d 623, 625 (1st Cir.), cert. denied, — U.S. —, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). We review a court's authentication rulings in a deferential manner, testing only for mistake of law or abuse of discretion. Ladd, 885 F.2d at 956; United States v. Williams, 809 F.2d 75, 89–90 (1st Cir.1986), cert. denied, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 (1987).

In the present case, the government made a sufficient showing that the cocaine seized was the cocaine produced at trial. It offered the testimony of agents who handled the cocaine and of a chemist who performed various tests on it in a Miami laboratory. Although Nunez complains that the government's testimony did not account for the manner in which the cocaine was sent from Puerto Rico to Miami, such a lacuna affects only the weight and not the admissibility of the evidence. See United States v. Casto, 889 F.2d 562, 569 (5th Cir.1989), cert. denied, 493 U.S. 1092, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990). This is particularly true in the case at bar, where Nunez himself adduced no evidence suggesting that the drugs had been switched, mishandled, or adulterated.

We will not paint the lily. On this record, the decision as to whether the evidence was satisfactorily authenticated was well within the realm of the trial court's discretion. See Ladd, 885 F.2d at 957; see also United States v. Luna, 585 F.2d 1, 6 (1st Cir.) (where the appellants "offered no evidence that the drugs had been altered[,] [t]he trial judge was thus entitled to rely on a presumption of official regularity" in the government's handling of the contraband), cert. denied, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

### IV. SENTENCING

Nunez's final assignment of error implicates the trial court's computation of the

---

the government carried its devoir of persuasion. We recognize, of course, as Perkins teaches, that, while passing the Machor test safeguards a conviction, there may be cases where, even short of passing the Machor test, a defendant nevertheless cannot make the requisite showing

of plain error. See, e.g., United States v. McGill, 952 F.2d 16, 19 n. 4 (1st Cir.1991) (a showing of plain error requires more than merely a showing of reversible error). This case does not require us to probe the limits of that proposition.

guideline sentencing range (GSR). The government counters with a claim that, if error inhered, it was harmless.

### A. *The Sentencing Adjustments.*

The lower court, rather than reducing Nunez's base offense level (BOL) because he was a "minor" or "minimal" participant in the offense of conviction, U.S.S.G. § 3B1.2, instead increased the BOL by two levels, from 26 to 28, premised on a finding that "the defendant was an organizer, leader, manager, or supervisor in [the] criminal activity." U.S.S.G. § 3B1.1(c). Nunez assigns error to both aspects of the role-in-the-offense determination. We think he is partially correct.

■ 1. *Lesser Participation.* We find Nunez's claim that he played a minor or minimal role in the crime to be doubly flawed. In the first place, the record does not reflect that he raised the point with sufficient clarity at the time of sentencing. It is, therefore, waived. *See United States v. Dietz,* 950 F.2d 50, 55 (1st Cir.1991) (in criminal sentencing context, arguments not addressed to the trial court at the appropriate time are deemed to be abandoned) (collecting cases).

■ In the second place, Nunez has not come close to demonstrating an entitlement to section 3B1.2 relief. A defendant has the burden of proving that he merits a downward adjustment in the offense level. *United States v. Ocasio,* 914 F.2d 330, 332 (1st Cir.1990). Considering that role-in-the-offense determinations are ordinarily fact-bound, and that Nunez was charged only with aiding and abetting a sale at which he was culpably present, we do not believe that the sentencing court was legally required to label him a minor or minimal participant in that offense. *Compare, e.g., United States v. DiIorio,* 948 F.2d 1, 5–6 (1st Cir.1991); *United States v. Rosado–Sierra,* 938 F.2d 1, 1–2 (1st Cir.1991) (per curiam); *United States v. Osorio,* 929 F.2d 753, 763–64 (1st Cir.1991); *Ocasio,* 914 F.2d

at 332–33; *United States v. Cepeda,* 907 F.2d 11, 12 (1st Cir.1990).

■ 2. *Supervisory Role.* The enhancement of Nunez's BOL is a horse of a different hue. On that issue, the government bore the burden of demonstrating that an upward adjustment was appropriate. *See United States v. Sklar,* 920 F.2d 107, 112 (1st Cir.1990). This burden was honored only in the breach: the sentencing court's subsidiary findings of fact were not fairly supportive of the two-level increase; our perscrutation of the nisi prius roll has revealed no such facts; and, at oral argument in this court, the government conceded that the record did not justify such an enhancement. Relatively small increases in a defendant's offense level can have serious consequences at sentencing. Thus, upgrading the BOL must be based on more than the trial judge's hunch, no matter how sound his instincts or how sagacious his judgment. Given the facts of record, there was no legally supportable basis for invoking U.S.S.G. § 3B1.1(c).

### B. *Overlapping Sentencing Ranges.*

■ The government argues that, notwithstanding the conceded error, the sentence actually imposed—78 months—still falls within the corrected GSR and, thus, should be upheld.[6] In Nunez's case, however, the trial judge, believing the GSR to span from 78 to 97 months, imposed a sentence at the range's nadir. We are simply not prepared to say that, had the judge correctly calculated the GSR, he would nonetheless have imposed an identical sentence.

■ We think the correct rule of law is that, where it appears reasonably likely that the district judge selected a sentence because it was at or near a polar extreme (whether top or bottom) of the guideline range that the judge thought applicable, the court of appeals should vacate the sentence and remand for resentencing if it is determined that the court erred in its computation of the range, notwithstanding that

---

**6.** Nunez was in criminal history category I. At level 28, the GSR was, therefore, 78 to 97 months. At level 26, the GSR would be from 63

to 78 months. Accordingly, the 78–month sentence was permissible at either level.

there may be an overlap between the "right" and "wrong" sentencing ranges sufficient to encompass the sentence actually imposed. *See United States v. Tetzlaff,* 896 F.2d 1071, 1073 (7th Cir.1990); *United States v. Williams,* 891 F.2d 921, 923 (D.C.Cir.1989); *see also United States v. De La Torre,* 949 F.2d 1121, 1122 (11th Cir.1992) (per curiam); *United States v. Urbanek,* 930 F.2d 1512, 1516 (10th Cir. 1991); *United States v. McCrary,* 887 F.2d 485, 489 (4th Cir.1989) (per curiam); *United States v. Turner,* 881 F.2d 684, 688 (9th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); *United States v. Vasquez,* 874 F.2d 250, 252 (5th Cir. 1989); *United States v. Bermingham,* 855 F.2d 925, 930–36 (2d Cir.1988). It is only where it is reasonably clear from the record that the trial court would have imposed the same sentence under either range that an appellate court should leave the sentence intact. *See, e.g., Bermingham,* 855 F.2d at 934–35; *cf. United States v. Concemi,* 957 F.2d 942, 953 (1st Cir.1992) (dictum; citing *Bermingham* ).

In the instant case, remand is required. The record fails to disclose a clear expression by the sentencing judge that 78 months was the appropriate sentence for Nunez's involvement in the crime committed, irrespective of the exact dimensions of the GSR. While the judge acknowledged the existence of the overlap and noted that, even if he accepted Nunez's calculation, a sentence of 78 months would not be unlawful, the record reveals no independent determination that such a sentence would be the most appropriate penological decision, whatever the dimensions of a properly calibrated GSR. In our view, such a determination is essential to upholding a defendant's sentence in circumstances where error has infiltrated the process of constructing the GSR. If a court, after due deliberation, chooses a sentence that, coincidentally, falls within the overlapped portions of adjacent sentencing ranges, resentencing may not be necessary, whichever range actually applies. But, a court may not pick a particular sentence solely to avoid the necessity of determining the guideline sentencing range. *See United States v. Wil-*

*lard,* 909 F.2d 780, 781–83 (4th Cir.1990) ("The fact of overlap cannot be the motivation to justify a court's not making a ... decision and standing alone does not validate a sentence within the overlap.").

## V. CONCLUSION

We need go no further. The record demonstrates that both defendants were fairly tried and justly convicted. For the most part, we reject their appeals. In Nunez's case, however, we vacate his sentence and remand for resentencing within the appropriate guideline range.

*The defendants' convictions and the sentence imposed on the defendant Ortiz are affirmed. The sentence imposed on the defendant Nunez is vacated and his case is remanded to the district court for resentencing in accordance with this opinion.*