February 8, 1993
 United States Court of Appeals
 For the First Circuit
 

No. 92-1709

 UNITED STATES,

 Appellee,

 v.

 PAUL J. CASTELLONE,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Francis J. Boyle, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 
 Bownes, Senior Circuit Judge, and
 
 Stahl, Circuit Judge.
 

 

Edward J. Romano with whom Michael Devlin was on brief for
 
appellant.

Stephanie S. Browne, Assistant United States Attorney, with whom
 
Margaret E. Curran, Assistant United States Attorney and Lincoln C.
 
Almond, United States Attorney, were on brief for appellee.
 

 

 February 8, 1993
 

 STAHL, Circuit Judge. Defendant-appellant Paul J.
 

Castellone pled guilty to a two-count information in which he

was charged with distribution of marijuana, in violation of

21 U.S.C. 841(a)(1). He was sentenced to 21 months of

imprisonment and three years of supervised release. In this

appeal, Castellone challenges his sentence on two grounds

related to the district court's calculation of the offense

level assigned to his conviction. Specifically, defendant

argues: 1) that the court erroneously included as relevant

conduct certain amounts of marijuana sold by a coconspirator;

and 2) that the court should not have ascribed to him a

managerial role in the offense. As we find these arguments

persuasive, and the government has candidly made us aware of

an apparent mathematical error in the offense level

calculation, we remand for resentencing.

 I.
 

 Background
 

 Because Castellone pled guilty, we garner the

relevant facts from the probation officer's Pre-Sentence

Report (PSR) and the transcript of the sentencing hearing.

United States v. Garcia, 954 F.2d 12, 14 (1st Cir. 1992). In
 

early January 1992, Detective Michael Purro of the

Providence, Rhode Island, Police Department began an

undercover investigation of marijuana trafficking by

Castellone and Roland R. Chaput. Purro was assisted by an

 -2-
 2

agent from the federal Bureau of Alcohol, Tobacco and

Firearms.

 On January 9, 1992, Detective Purro, in his

undercover capacity, purchased one pound of marijuana from

Castellone for $2,200 ("the first sale"). The next day,

Purro purchased another pound of marijuana from Castellone

for the same price ("the second sale"). Both sales took

place in the late afternoon at a Dunkin Donuts on East Street

in Providence. Prior to the second sale, Purro followed

Castellone to the Dunkin Donuts parking lot and observed

Chaput arrive and enter Castellone's car. Purro then

approached Castellone's vehicle and introduced himself

directly to Chaput, whom he believed, correctly, as it later

turned out, to be Castellone's supplier.

 At some point between January 10 and 16, Castellone

and Purro discussed a sale of five pounds of marijuana and a

handgun. Castellone told Purro that he had been in contact

with Chaput and would be able to execute the sale. Since law

enforcement officials considered Chaput to be a higher-level

dealer and a more important target than Castellone, Detective

Purro decided to exclude Castellone from any future deals,

and instead buy directly from Chaput. After obtaining

Chaput's phone number from a confidential informant, Purro

contacted him and after discussion was offered five pounds of

marijuana for $1700 per pound ("the third sale"). Castellone

 -3-
 3

was totally unaware of the third sale or the direct contact

between Purro and Chaput.

 On January 16, 1992, at approximately 6:30 p.m.,

Chaput, Purro, and two other men, Robert Laiter and Peter M.

Leite, all arrived at the Dunkin Donuts in separate vehicles.

Chaput retrieved a handgun from Laiter's car and delivered it

to Purro. Chaput, Laiter and Leite were all arrested as

Chaput was removing the marijuana from the trunk of Leite's

car. Law enforcement agents found five, approximately one-

pound packages of marijuana in the trunk.1

 Castellone was not present at the third sale, but

was later arrested pursuant to a warrant. He subsequently

agreed to plead guilty to an information charging him with

the first two marijuana deals. He also agreed to assist the

government in its attempts to arrest others in the drug

trade. In return for his cooperation, the government agreed

not to charge him with conspiring with Chaput to distribute

marijuana. The plea agreement also indicated that the weight

of the two sales to which Castellone was pleading was 908.7

grams. Moreover, the government agreed it would not seek to

hold Castellone responsible at sentencing for the 2,300.3

grams or the firearm seized at the January 16, 1992, arrest.

 

1. The total weight of the five packages was 2,300.3 grams.
As a pound contains 454 grams, the contraband slightly
exceeded five pounds.

 -4-
 4

Finally, the government agreed to recommend a sentence at the

low end of the applicable guideline range.

 II.
 

 Sentencing
 

 In calculating Castellone's base offense level

("BOL"), the probation officer used a total quantity of 3209

grams of marijuana. This amount included the 2,300.3 grams

Chaput delivered to Purro at the third sale, as well as the

908.7 grams Castellone sold directly to Purro at the first

two sales. Applying the Sentencing Guidelines' Drug Quantity

Table, U.S.S.G. 2D1.1(c), the probation officer tabulated a

BOL of 12, applicable to quantities of marijuana between 2.5

and five kilograms. The BOL was increased by two levels for

Castellone's managerial role in the offense, U.S.S.G. 

3B1.1(c), and decreased by two levels for acceptance of

responsibility. After assigning Castellone a criminal

history category of I, the probation officer concluded that

Castellone's offense level was 12, with a resulting guideline

range of 10 to 16 months.

 Prior to sentencing, Castellone objected to the

inclusion of the 2300.3 grams of marijuana from the third

sale as relevant conduct, as well as to the two-level

adjustment for a managerial role in the offense. At the May

19, 1992, sentencing hearing, the defense put Detective Purro

on the stand to testify about, inter alia, Castellone's
 

 -5-
 5

involvement--or lack thereof--in the third sale. At the

close of the hearing, the trial court expressed concern over

what it thought to be an inconsistency between the

government's plea agreement obligation not to hold Castellone

responsible for the third sale, and the probation officer's

statement that in response to Castellone's objection, the

government was prepared to present evidence regarding

Castellone's role in the third sale. Accordingly, the trial

court gave Castellone the option of withdrawing his guilty

plea. Castellone declined, and the sentencing hearing

reconvened on June 15, 1992, whereupon the government

reiterated its position that defendant was legally

responsible only for the 908.7 grams of marijuana from the

first two sales. The court, however, questioned the

government's decision to forego inclusion of the 2300.3

grams. In response, the government cited the plea agreement,

which, in turn, was based on its conclusion that the element

of foreseeability of the third sale, as it related to

Castellone, was "questionable." The trial court then ordered

further testimony from Purro, to elaborate on what, if any,

nexus existed between Purro and Castellone's last

conversation and the third sale. 

 Following Purro's testimony, and defense argument,

the court found that Castellone initiated the third sale and

that he took two actions in furtherance of that sale by

 -6-
 6

initiating the negotiations with Purro and by communicating

Purro's marijuana and handgun order to Chaput. Based on

those findings, the court ruled that the third sale

constituted relevant conduct for which Castellone should be

held responsible.

 Next, having heard argument regarding Castellone's

role in the offense, the trial court found that Castellone's

negotiations in the first two sales and involvement in the

third supported an offense level increase for a managerial

role. Castellone appeals these two findings.

 III.
 

 Discussion
 

 At the outset, we note that remand is in order to

correct an apparent mathematical error in calculating

Castellone's offense level, irrespective of our decision on

the merits of the trial court's findings.2 A brief

explanation follows.

 The court found that the third sale, involving the

2300.3 grams of marijuana and the handgun, was relevant

conduct for purposes of determining Castellone's offense

level. As noted, supra, p. 3, this amount of marijuana
 

yielded a BOL of 12. The firearm added two levels, to 14.

 

2. Although Castellone failed to raise this argument before
the trial court, we do have jurisdiction to correct plain
error. United States v. Morales-Diaz, 925 F.2d 535, 539 (1st
 
Cir. 1991).

 -7-
 7

U.S.S.G. 2D1.1(b)(1).3 The court's ruling on Castellone's

managerial role added two more levels, resulting in an

adjusted offense level of 16. U.S.S.G. 3B1.1(c). Finally,

the court agreed that Castellone was entitled to a two-level

reduction for his acceptance of responsibility, U.S.S.G. 

3E1.1(a), suggesting an offense level of 14, which, when

coupled with a criminal history category I, yields a

sentencing range of 15 to 21 months. U.S.S.G. 5, Part A,

Sentencing Table. The court, however, after factoring in the

relevant conduct, erroneously began with an offense level of

18, which it reduced to 16 based on Castellone's acceptance

of responsibility. Thereafter, consistent with the plea

agreement, the trial court sentenced Castellone at the

lenient end of the 21 to 27 month range called for by offense

level 16. While we might assume that the district court

would again follow the plea agreement and sentence Castellone

to the bottom end of the corrected guideline range, our other

rulings relative to the instant sentence require remand of

 

3. The PSR omitted reference to the firearm, and thus did
not account for the two-point upward adjustment. The trial
court, however, explicitly found that the gun, as part of the
third sale, was relevant conduct attributable to Castellone.
While Castellone does not specifically appeal the propriety
of the handgun increase, he did object to and has appealed
the inclusion of the third sale. The handgun increase,
therefore, succeeds or fails concomitant with the third sale,
without meriting separate discussion.

 -8-
 8

this item as well.4 We turn now to the substantive issues

on appeal.

A. Relevant Conduct--The Third Sale
 

 Pursuant to U.S.S.G. 2D1.1(c), the BOL for drug

trafficking offenses depends on the quantity of contraband

attributable to the defendant. For sentencing purposes, this

total includes the amount to which the defendant pleads

guilty, as well as any relevant uncharged conduct. Garcia,
 

954 F.2d at 15 (citations omitted). "[D]rugs not specified

in the count of conviction are to be included in determining

the offense level if they were part of the same course of

conduct or part of a common scheme or plan as the count of

conviction." U.S.S.G. 1B1.3, comment. (background). In

cases involving drug conspiracies, relevant conduct also

includes "all reasonably foreseeable acts and omissions of

others in furtherance of" the conspiracy. U.S.S.G. 

1B1.3(a)(1)(B); Garcia, 954 F.2d at 15. In order to factor
 

the quantities associated with relevant conduct into the

sentencing formula, the government must establish by a

preponderance of the evidence that a sufficient nexus exists

between the conduct at issue and the offense of conviction.

United States v. Sklar, 920 F.2d 107, 110 (1st Cir. 1990).
 

 

4. Because of our decision today, the low end of the
applicable guideline range may lead to a sentence not
involving incarceration. We leave that decision to the
district court.

 -9-
 9

We will set aside the district court's findings on relevant

conduct only if they are clearly erroneous. United States v.
 

Camuti, 950 F.2d 72, 74 (1st Cir. 1991).
 

 As he did below, Castellone argues here that the

government's decision to "cut him out" of the third sale and

deal directly with Chaput without his knowledge inoculates

him from responsibility for the sale. Castellone bases his

argument on the following undisputed facts. Castellone's

relationship with Purro was severed after only preliminary

conversations relative to the third sale wherein the two

never agreed that a sale would take place, or on a price for

such a sale. Furthermore, due to his own profit motive,

Castellone did not want Purro to deal directly with Chaput,

did not know Purro was going to do so, and did not know that

the third sale had occurred until after his arrest. 

 The trial court, however, found that Castellone and

Chaput had formed a conspiracy to sell marijuana, and that

Castellone initiated the negotiation for the third sale and

communicated Purro's third sale request to Chaput. The court

then determined that the third sale was both foreseeable to

Castellone and in furtherance of the conspiracy. Therefore,

the trial court concluded that the third sale was relevant

conduct for purposes of sentence calculation. Based on the

following, we disagree.

 -10-
 10

 In analyzing this situation, we find that two of

our recent decisions offer direction. In United States v.
 

Wood, 924 F.2d 399 (1st Cir. 1991), the defendant was
 

convicted of one narcotics sale. At sentencing, the district

court placed additional, uncharged sales into the relevant

conduct category. We ruled that an uncharged sale between

defendant's wife and a drug supplier, of which the defendant

had no knowledge until after the fact, could not be

considered relevant conduct for sentencing purposes. Id. at
 

404-05. We rested our decision on the fact that the

defendant "in no way conspired to facilitate the deal;

indeed, he had no knowledge that his wife was engaged in drug

transactions with anyone other than himself." Id.
 

Subsequently, we upheld a district court's decision to

include as relevant conduct drug sales between the

defendant's coconspirator and an undercover agent, despite

the fact that the defendant was not personally involved in

the later sales. Garcia, 954 F.2d at 16-17. A fair reading
 

of Garcia, however, indicates that the defendant and his
 

coconspirator worked as a team to sell drugs to the

undercover officer. As we noted:

 "Garcia introduced [his coconspirator to
 
 the undercover agent] for the express
 
 purpose of facilitating drug
 transactions. He was aware of the nature
 
 and salient details of the relationship
 
 that developed between the two men.
 
 There was no evidence of Garcia's
 affirmative withdrawal from the

 -11-
 11

 conspiracy or of any other intervening
 
 event materially affecting the
 
 trafficking calculus." 
 

Id. at 16 (emphasis added). We stated that "the measure of a
 

defendant's accountability for drug transactions in which he

was not personally involved is usually congruent with the

scope of his agreement with the other participants in the

enterprise." Id. (citation omitted). We therefore
 

distinguished Wood on the ground that "Garcia's agreement
 

with his coconspirator [] could reasonably be said to

transcend the initial series of transactions." Id. 
 

 Here, with Wood and Garcia as our guideposts, we
 

find that Castellone was sufficiently detached from the third

sale so that it stands alone, and not as part of an overall

course of conduct. Based on our review of the record, we

doubt whether Castellone could have foreseen that the third

sale, about which he knew nothing, would take place as it

did, from Chaput directly to Purro. And although the

evidence supports the district court's conclusion that

Castellone and Chaput had formed a conspiracy to sell

marijuana, there is no evidence that the third sale was in

furtherance of a common plan between Castellone and Chaput.

Just as the defendant in Wood had no knowledge that his wife
 

dealt with anybody but him, Castellone had no reason to

expect Purro to deal directly with Chaput. The record is

clear that Castellone was little more than a street-level

 -12-
 12

"retail" dealer, and that Chaput was his "wholesaler," rather

than his partner. This conclusion is supported by the

circumstances of the first two sales, wherein Castellone

bought marijuana from Chaput, and sold it to Purro for a

several hundred dollar profit.5 As for the third sale, the

record does not support the trial court's conclusion that

Castellone initiated the negotiations. Purro's testimony

indicated only that the two "had communication" after the

second sale, but is silent as to the instigator. Moreover,

while the record does support the finding that Castellone

told Chaput of Purro's interest in another sale, there is

nothing in the record to indicate that Castellone's call to

Chaput was anything other than part of the previous modus
 

operandi. In other words, after Purro made the request for
 

more marijuana and a gun, Castellone attempted to accommodate

him by contacting his supplier. There is nothing in the

record to indicate that Castellone's call to Chaput was

intended to facilitate the Chaput-Purro transaction. Indeed,

such a conclusion defies logic, because the record

demonstrates that Castellone's only source of narcotics-

related income was his own "retail" operation. Unlike the

defendant in Garcia, Castellone was in business for himself.
 

Also unlike the scenario in Garcia, Castellone never
 

 

5. The exact amount of Castellone's per-pound profit is
disputed. Resolution of that issue, however, is
insignificant to our analysis.

 -13-
 13

introduced Purro to Chaput. Had events taken their usual

course, as Castellone had every reason to expect, Castellone

would have again purchased the contraband from Chaput,

factored in a profit, and re-sold it to Purro. Castellone,

however, never again discussed the sale with Purro, as he had

been, unbeknownst to him, bypassed. This is akin to the

"intervening event" adverted to in Garcia. Thus, there was
 

no evidence from which the court could properly find that the

third sale was in furtherance of a common scheme involving

Castellone and Chaput. Accordingly, we find the district

court's inclusion of the third sale as relevant conduct to be

clearly erroneous.6

B. The Managerial Role
 

 Despite entreaties from both the defense and

government, the trial court assessed Castellone a two-level

increase in his BOL for his role as a manager of criminal

activity pursuant to U.S.S.G 3B1.1(c). Upon review of the

record, we find this increase legally insupportable.

 At the outset, we note that the government bears

the burden of proving that an upward adjustment was

warranted. United States v. Ortiz, 966 F.2d 707, 717 (1st
 

Cir. 1992), cert. denied, 61 U.S.L.W. 3479 (U.S. Jan. 11,
 

 

6. We are not unmindful of our recent decision in United
 
States v. Moran, No. 91-1772 (1st Cir. Jan 20, 1993).
 
However, we view the facts of this case quite differently
than those in Moran.
 

 -14-
 14

1993) (No. 92-6552). To meet its burden, the government must

demonstrate that Castellone exercised "some degree of control

over others involved in the commission of the offense or he

must have been responsible for organizing others for the

purpose of carrying out the crime." United States v. Fuller,
 

897 F.2d 1217, 1220 (1st Cir. 1990). Here, we find the

record devoid of evidence of such control or organization.

On appeal, the government argues that Castellone determined

who purchased, when and where sales took place, prices, and

profit. Thus, the argument goes, it was Castellone's

decisions on those matters that effectuated his control over

when and where Chaput and others presented themselves. With

respect to the first part of the argument, the same can be

said of any independent, street-level dealer. In fact, no

street-level drug sale could ever be made without a customer,

a time and location for the sale, and a price. Furthermore,

the profit Castellone determined was his own, not Chaput's.

Moreover, the second part of the argument is unsubstantiated.

There is simply no evidence that Castellone exercised any

control over the movement of Chaput--or anyone else. In

ruling in favor of the increase, the trial court stated:

 It's not necessary that a [d]efendant be
 the CEO of the operation to be in a
 managerial role. Here, there is no
 question but that the Defendant
 negotiated the first two transactions and
 began the negotiations for the third
 transaction, and along with Mr. Chaput,
 the transactions were carried out. It

 -15-
 15

 seems to me those facts do establish a
 managerial role on his part. . . .

Conspicuously lacking from the court's analysis, however, is

any finding that Castellone organized or exercised control

over others--that is, that he "managed" or "organized,"

within the meaning of section 3B1.1(c).7 We have recently

stated that an upward BOL adjustment "must be based on more

than the trial judge's hunch, no matter how sound his

instincts or how sagacious his judgment." Ortiz, 966 F.2d
 

707, 717 (1st Cir. 1992). The evidence in this case does not

support such an adjustment.

 Appellant's sentence is vacated and the case is
 

remanded to the district court for resentencing in accordance
 

with this opinion.
 

 

7. By comparison, Chaput, who also received a two-level
managerial role adjustment, was accompanied by his
subordinates at the third sale.

 -16-
 16