**UNITED STATES, Appellee,**

v.

**Frederick Fermin ORTIZ,**
**Defendant, Appellant.**

**No. 93–1350.**

United States Court of Appeals, First Circuit.

Heard Feb. 11, 1994.

Decided May 5, 1994.

Bárry P. Wilson, Boston, MA, for appellant.

Geoffrey E. Hobart, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., and R.

Bradford Bailey, Asst. U.S. Atty., Boston, MA, were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

In this appeal, defendant-appellant Frederick Fermin Ortiz challenges, on a variety of grounds, his convictions and sentence for conspiracy to possess cocaine with intent to distribute and for possession of cocaine with intent to distribute. After carefully considering defendant's arguments, we affirm.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

As is always the case when considering a criminal defendant's challenge to his/her conviction, we interpret the record in a light most amenable to the government. *See, e.g., United States v. Ortiz,* 966 F.2d 707, 710 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993).

On February 4, 1992, several federal and local law enforcement agents, acting in response to a tip from a reliable informant, were conducting surveillance of a single-family house located at 25 Glen Ellen Road in Lowell, Massachusetts. These agents observed defendant, along with codefendants Walter DeJesus Zapata ("Zapata") and William DeJesus Escobar–Vegara ("Escobar")[1] (and several other individuals), moving casually in and around this house and its garage. A Ford Taurus was parked in the garage with its hood and doors open. Although the agents at one point saw Zapata and Escobar enter the Taurus and begin tugging at the vehicle's back seat, at no time did they see anyone actually doing any work under the car's hood.

At approximately 2:00 p.m., a second vehicle occupied by two unidentified males pulled into the driveway. A group of individuals including defendant, Escobar, and Zapata approached the vehicle's passenger side (with Escobar in the lead). Escobar then engaged the passenger of the vehicle in conversation. After several minutes of conversation, the unidentified passenger handed Escobar a key, which Escobar placed into his pocket.

Shortly thereafter, defendant, Escobar, and Zapata entered a blue station wagon parked in front of the house and drove away. Defendant was the driver. One of the surveilling agents followed this vehicle to a condominium located at 77 Acton Road in Lowell, and took up a second surveillance position about twenty yards from the condominium's entrance. From this position, he observed Escobar use a key to unlock the front door. All three men then proceeded inside.

Several minutes later, the surveilling agent observed defendant exit the same front door, approach the blue station wagon, remove a child safety restraint seat from the wagon, and carry it over to a blue Monte Carlo parked in the condominium's driveway. He unlocked the car door, placed the child's seat into the back seat, and then reentered 77 Acton Road.

A few moments later, defendant and Zapata again exited the condominium. Each man was carrying a large, black travel bag which appeared heavy to the surveilling agent. They opened the trunk of the Monte Carlo, placed the two bags inside, closed the trunk, and reentered the condominium. A few minutes later, Zapata exited the residence, entered the Monte Carlo, and drove away. Subsequently, Zapata was approached by law enforcement officials at a rest area off Route 128 in Newton, Massachusetts, and was asked for permission to search the Monte Carlo. Zapata consented to the search, which revealed that the two black bags he and defendant had placed into the trunk contained 25 kilograms of cocaine. Zapata then was placed under arrest.[2] An arresting officer testified that one of the two black bags was unzipped 4–6 inches at the time of

---

1. The trial record reflects, and defendant's counsel confirmed at oral argument, that contrary to the more prevalent Hispanic custom, defendant and his codefendants prefer that the last of their given names be used as surnames.

2. The details of Zapata's arrest are set forth in greater detail in *United States v. Zapata,* 18 F.3d 971, 973–74 (1st Cir.1994).

the consensual search, and that, through this 4–6 inch opening, he could plainly see brown and yellow taped bundles which, in his experience, typically are used to package kilogram quantities of cocaine.

Later that same day, search warrants were executed at both 25 Glen Ellen Road and 77 Acton Road. The search of 77 Acton Road turned up a variety of drug paraphernalia (none of which was in plain view), drug packaging (all of which was found in the garbage), and an electric bill for the premises in the name of Thomas Alvarez. It turned out that the blue station wagon defendant drove from 25 Glen Ellen Road to 77 Acton Road also was registered to the same Thomas Alvarez.

At the time the search warrant was executed, Escobar was found watching television at 77 Acton Road, but defendant was not present at that location. Defendant eventually was arrested at 25 Glen Ellen Road. Immediately after his arrest, defendant told the police that he was a cleaner, and that he lived on Beacon Street in Lawrence, Massachusetts. Later, however, during booking, he stated that he was a mechanic and lived on Haverhill Street in Lawrence. At the time of his arrest, defendant did not have any engine grease or oil on his hands.

On February 26, 1992, a grand jury returned a two-count indictment charging defendant, Escobar, and Zapata with (1) conspiring to possess with intent distribute, and (2) possessing with intent to distribute (as well as aiding and abetting the possession of) five or more kilograms of cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1); *see also* 18 U.S.C. § 2. Trial commenced on October 19, 1992. On October 22, 1992, at the conclusion of the government's case, the district court granted Escobar's motion for judgment of acquittal made pursuant to Fed.R.Crim.P. 29(a); however, it denied a similar motion made by defendant. On October 26, 1992, the jury returned guilty verdicts against defendant and Zapata as to both counts of the indictment. On March 16, 1993, the district court imposed the mandatory minimum 120–month incarcerative sentence prescribed by statute. *See* 21 U.S.C. § 841(b)(1)(A)(ii).

## II.

## DISCUSSION

On appeal, defendant argues that (1) there was insufficient evidence to support his convictions; (2) prosecutorial misconduct during closing argument deprived him of a fair trial; (3) he was victimized by constitutionally ineffective assistance of counsel; (4) evidence discovered after the trial should have entitled him to a new trial; and (5) the indictment should have been dismissed because he was not tried within the period prescribed by the Speedy Trial Act. Defendant also takes issue with the district court's method of determining drug quantity at his sentencing. We discuss each argument in turn.

### A. Sufficiency of the Evidence

Defendant's primary and central argument is that there was insufficient evidence to support his convictions. The argument is not without force, as the evidence against him was far from overwhelming. Moreover, it is made with considerable skill and energy by defendant's appellate counsel. Ultimately, however, we are not persuaded that any error took place.

In assessing whether there was sufficient evidence to sustain a conviction, we examine the record in a light most favorable to the government, drawing all reasonable inferences in its favor, with an eye towards whether the proof would have allowed a rational jury to determine beyond a reasonable doubt that the defendant was guilty of the crime charged. *See, e.g., Ortiz,* 966 F.2d at 711. "In this analysis, no premium is placed upon direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction." *Id.* Indeed, the government "may prove its entire case through the use of circumstantial evidence." *United States v. Akinola,* 985 F.2d 1105, 1109 (1st Cir.1993).

Two other points should be borne in mind. First, the government "need not exclude every reasonable hypothesis of innocence." *Id.* And second, "juries are not required to examine the evidence in isolation, for 'individual pieces of evidence, insufficient in themselves to prove a point, may in culmi-

nation prove it.'" *Ortiz*, 966 F.2d at 711 (quoting *Bourjaily v. United States*, 483 U.S. 171, 179–80, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987)).

■ Here, we think it apparent that the sufficiency issue reduces into a rather straightforward inquiry: Could a rational jury have found beyond a reasonable doubt that defendant knew that the black bag he transported from 77 Acton Road to the trunk of the blue Monte Carlo contained cocaine? After all, if defendant had this knowledge, we think it self-evident from the quantity of cocaine defendant possessed, *see United States v. Echevarri*, 982 F.2d 675, 678 (1st Cir.1993) (intent to distribute can be inferred from the quantity of the controlled substances possessed), from defendant's undisputed possession of the cocaine while he transported it from the condominium to the Monte Carlo, and from the " 'development and collocation of [other] circumstances' " apparent in the record, *see United States v. Lopez*, 944 F.2d 33, 39 (1st Cir.1991) (quoting *United States v. Sanchez*, 917 F.2d 607, 610 (1st Cir.1990), *cert. denied*, 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991)),[3] that defendant and Zapata (and others unknown to the grand jury) had at least a tacit agreement to possess the cocaine with an intent to distribute it, *see United States v. Fisher*, 3 F.3d 456, 462 n. 18 (1st Cir.1993) (noting elements of crimes charged in the instant indictment).

We conclude that the circumstantial evidence in this case compels an affirmative answer to this question. Defendant was among a small group of individuals presented with a key to a condominium where millions of dollars worth of cocaine was being stored. This suggests that the persons who leased or owned the condominium (and who, it may fairly be inferred, had knowledge of its contents) trusted defendant enough to allow him to be present at the scene where a serious narcotics offense was being committed. This trust, in turn, permits a reasonable inference of criminal complicity between defendant and these persons. *See United States v. Tejeda*, 974 F.2d 210, 213 (1st Cir.1992) (" 'The fact finder may fairly infer ... that it runs counter to human experience to suppose that criminal conspirators would welcome innocent non-participants as witnesses to their crimes.' " (quoting *United States v. Passos-Paternina*, 918 F.2d 979, 985 (1st Cir.1990), *cert. denied*, 501 U.S. 1209, 111 S.Ct. 2808, 115 L.Ed.2d 980 (1991))). And, when this inference is coupled with the fact that defendant, who had entered the condominium empty-handed, actually retrieved the drugs from the condominium and loaded them into the Monte Carlo, *cf. Ortiz*, 966 F.2d at 712 (indicating that where the defendant was present during the course of transportation or storage of contraband, the possibility that s/he is an innocent bystander is significantly greater), we think it apparent that the jury rationally "*could* have found," *Akinola*, 985 F.2d at 1109, that defendant knew that the black bags contained cocaine. Accordingly, we reject defendant's sufficiency challenge.[4]

### B. Prosecutorial Misconduct

■ Defendant's second argument is that prosecutorial misconduct during closing argument deprived him of a fair trial. Specifically, defendant contends that the prosecutor "repeatedly, both expressly and impliedly, referred to Escobar as a member of a conspiracy which included, *inter alia*, [himself] and Zapata" despite the fact that the district court had found insufficient evidence to send the conspiracy charge against Escobar to the jury. In defendant's view, the prosecutor's

---

3. Among these circumstances were (1) defendant's apparent access to 77 Acton Road at a time when a significant amount of drugs were being stored there; (2) defendant's apparent access to an automobile registered to a person who seemingly had some degree of control over 77 Acton Road; (3) defendant's significant (in terms of time and proximity) association with Zapata during the course of Zapata's preparations to distribute the cocaine; (4) defendant's placing of the drugs into the trunk of the Monte Carlo; and (5) defendant's inconsistent statements regarding his residency and occupation following his arrest.

4. Much of the evidence we have relied upon in rejecting defendant's sufficiency claim equally implicated Escobar, whose motion for a judgment of acquittal at the conclusion of the government's case was granted by the district court. The propriety of that acquittal is not, of course, before us.

statements constituted impermissible references to matters not in evidence or not supported by a reasonable view of the evidence. *See United States v. de Leon Davis,* 914 F.2d 340, 344–45 (1st Cir.1990). We are not convinced.

Even if we assume *arguendo* the truth of defendant's assertion, we are constrained by the fact that defendant did not interpose a contemporaneous objection to these references during the course of closing arguments. Accordingly, we review only for plain error. And, error rises to this level only when it is " 'so shocking that [it] seriously affect[ed] the fundamental fairness and basic integrity of the proceedings conducted below.' " *E.g., United States v. Hodge–Balwing,* 952 F.2d 607, 611 (1st Cir.1991) (quoting *United States v. Olivo–Infante,* 938 F.2d 1406, 1412 (1st Cir.1991)).

Here, the references complained of, even if erroneous, fell far short of the plain error threshold. They did not in any way interfere with the jury's ability to resolve the keystone issue in this case—whether defendant knew that the bags he was transporting to the Monte Carlo contained cocaine. Moreover, they were followed by *two* separate instructions informing the jury that closing arguments do not constitute evidence. In light of these facts, and of the further fact that there was a significant amount of circumstantial evidence supporting the jury's finding that defendant, Zapata, and persons unknown were engaged in a conspiracy, *see supra* note 3, there is no basis for us to conclude that the references to Escobar in the closing arguments, even if erroneous, resulted in a miscarriage of justice. *See United States v. Giry,* 818 F.2d 120, 133 (1st Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987). Accordingly, we reject defendant's prosecutorial misconduct argument.

### C. Ineffective Assistance

■ Defendant next argues that his trial attorney's failure to object to the prosecutor's references to Escobar as a member of the conspiracy during closing arguments constitutes ineffective assistance of counsel. So far as we can tell, this argument never was presented to the district court. And, gener-

ally speaking, we will not address an ineffective assistance claim raised for the first time on direct appeal. *See, e.g., United States v. Jadusingh,* 12 F.3d 1162, 1169 (1st Cir.1994). In situations like the present one, however, where " 'the critical facts are not in dispute and a sufficiently developed record exists,' " *id.* (quoting *United States v. Daniels,* 3 F.3d 25, 26–27 (1st Cir.1993)), there is no reason for us to delay consideration of defendant's claim. Therefore, we address defendant's ineffective assistance argument on the merits.

■ In order to demonstrate constitutionally ineffective assistance of counsel, a defendant must show (1) that counsel's conduct fell below the applicable standard for performance, defined by what the lawyer knew, or should have known, at the time of his/her tactical choices; and (2) that prejudice resulted. *Fisher,* 3 F.3d at 463. In this context, "prejudice" means that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Lopez–Nieves v. United States,* 917 F.2d 645, 648 (1st Cir.1990) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ Here, even if we assume *arguendo* that trial counsel's failure to object fell below the applicable standard, we cannot say that, but for the error, there is a reasonable probability that defendant would have been acquitted. As we have stated above, the prosecutor's references to Escobar during his closing argument, even if erroneous, in no way interfered with the jury's ability to make the central factual determination in this case (i.e., whether defendant knew the bags contained cocaine). Furthermore, we are confident that the trial court's two instructions that closing arguments are not evidence, made subsequent to the challenged references, largely offset any improper effects of those references. Finally, the significant circumstantial evidence supporting the jury's conspiracy finding cements our view that the challenged references did not affect the outcome of this case. Accordingly, we reject defendant's argument that he was victimized

by constitutionally ineffective assistance of counsel.

## D. Newly–Discovered Evidence

Defendant's fourth argument is that the district court erred in denying, by means of a margin order, his motion for a new trial based upon newly-discovered evidence. The evidence at issue is (1) an affidavit by one Claudio Tejeda, which avers that defendant was working for Tejeda as a mechanic on February 4, 1992; and (2) an unsworn statement by Escobar providing an innocent explanation for the events of February 4, 1992. Once again, we are not persuaded by defendant's argument.

In order for a defendant to prevail on a motion for a new trial based upon newly-discovered evidence, four conditions must be met: (1) the evidence was unknown or unavailable to defendant at the time of trial; (2) the failure to discover the evidence was not due to a lack of diligence on the part of defendant; (3) the new evidence must be material; and (4) the evidence would probably produce an acquittal upon retrial of defendant. *United States v. Benavente Gomez,* 921 F.2d 378, 382 (1st Cir.1990); *United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980). If any one of these four factors is lacking, the motion for a new trial should be denied. *United States v. Natanel,* 938 F.2d 302, 313 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992).

Because the court denied defendant's motion without stating its reasons, we do not know the precise basis for its decision. Our examination of the record, however, convinces us that the court could not have found that defendant exercised due diligence in attempting to secure Tejeda's and Escobar's testimony prior to the conclusion of trial. No portion of the trial record before us indicates that defendant ever expressed a need

for testimony from either Tejeda or Escobar; defendant neither requested a continuance so that he could try to locate either one of them nor sought the district court's assistance in securing their presence by means of the judicial process. *Cf. Wright,* 625 F.2d at 1019 (affidavit stating that defendant, who failed to move for a continuance to locate witness, had been conducting an "investigation" into the witness's location during trial would not preclude a finding of a lack of due diligence). Moreover, in his severance motion, defendant did not indicate any wish or intention to call Escobar as a witness on his own behalf.[5] Accordingly, without expressing any comment as to whether defendant has met any of the three other conditions necessary for the granting of a new trial, we reject defendant's assertion that the court erred in denying his motion.

## E. Speedy Trial Act

Defendant's fifth argument is that he was not brought to trial within the 70–day period mandated by the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1). We do not agree.

Defendant appears to concede that all time prior to May 20, 1992, was properly excluded from the 70–day period prescribed in § 3161(c)(1). He argues, however, that the 120–day period from May 20, 1992, through September 18, 1992, when he filed a motion to dismiss on Speedy Trial Act grounds, was not excludable. He therefore contends that the court erred in denying his motion to dismiss the indictment for violation of Act.

Defendant's argument overlooks two facts. First, on June 16, 1992, Escobar filed two motions to limit the use of co-conspirator statements against him. Accordingly, the 70–day speedy trial period, which had started to run on May 20, 1992, was tolled, at least for the next 30 days. *See* 18 U.S.C. § 3161(h)(1)(F) and (J);[6] *see also United*

---

5. The only indication in the record of any attempt by defendant to locate Tejeda or Escobar during trial is found in the text of the motion for a new trial, which states: "Frederick Fermin Ortiz's lawyer kept telling Rosaura Barrios [a friend of Ortiz] to find Escobar and Claudio Tejeda. She finally found them on the twenty-seventh and twenty-eighth of November [after

defendant's trial was concluded]." Patently, this is insufficient to constitute due diligence.

6. Although the record is not entirely clear on this point, the district court, which never ruled on Escobar's motions, apparently treated them as motions which did not require a hearing, and which therefore only toll the 70–day period for

States v. Torres Lopez, 851 F.2d 520, 526 (1st Cir.1988) (speedy trial motion resulting in excludable time from one defendant stops the clock for all codefendants), cert. denied, 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). Second, on July 31, 1992, and September 25, 1992, the district court convened scheduling conferences at which, without any objection from defendant's counsel, defendant's trial was continued (first until September 30, 1992, and then until October 19, 1992). Therefore, it appears that all the time prior to defendant's trial other than those periods from May 20, 1992, through June 16, 1992, and July 16, 1992, through July 31, 1992, was excludable. And, because these periods of non-excludable time do not add up to 70 days, there was no Speedy Trial Act violation.

### F. Sentencing

 Defendant's final argument is that the district court erred when, in determining that defendant should be held accountable for the 25 kilograms of cocaine found in the two bags for purposes of both the Sentencing Guidelines and the mandatory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(A)(ii), it did not make a finding as to defendant's subjective knowledge regarding drug quantity. In so doing, defendant relies upon an opinion in which Judge Weinstein held that a defendant can be sentenced only on the amount of drugs s/he reasonably foresaw as being involved in his/her conduct. See United States v. Ekwunoh, 813 F.Supp. 168, 178 (E.D.N.Y.1993), vacated on other grounds, 12 F.3d 368 (2d Cir.1994).

While the issue raised certainly is an interesting one, it is not one we need resolve here. Defendant received only the 120–month mandatory minimum sentence prescribed by § 841(b)(1)(A)(ii) because the two bags contained five or more kilograms of cocaine.

Thus, any error committed by the district court would have been harmless unless the court could have found, without committing clear error, see United States v. Bradley, 917 F.2d 601, 605 (1st Cir.1990), that defendant reasonably did not foresee that at least five kilograms of cocaine were involved in his offenses. Here, there is no way the court could have reached that conclusion without committing clear error.[7] The two bags, which were visibly heavy to the surveilling agent, contained 25 one-kilogram packages of cocaine (fifteen packages in one bag and ten in the other) and apparently little, if anything, else. And, as we have already observed, the jury implicitly and supportably found that defendant knew the contents of the black bags. In light of these facts alone, there simply would be no basis for finding that defendant reasonably did not foresee that at least five kilograms of cocaine were involved in his crimes. Accordingly, even if the district court erred in failing to make a finding as to defendant's subjective knowledge regarding drug quantity (a point on which we express no opinion), the error was harmless.

### III.

### CONCLUSION

Having rejected each of the arguments made on appear by defendant, we affirm his convictions and sentence.

**Affirmed.**

---

30 days. See Henderson v. United States, 476 U.S. 321, 328–29, 106 S.Ct. 1871, 1875–76, 90 L.Ed.2d 299 (1986) (indicating that, when a pretrial motion not requiring a hearing is filed with the district court but not ruled upon, § 3161(h)(1)(F) and (J) act in unison to exclude 30 days from the speedy trial clock).

7. In so stating, we note that, at his sentencing hearing, defendant did not evince a desire to add

to or challenge any of the drug quantity evidence adduced at trial. Cf. United States v. Tavano, 12 F.2d 301, 305–06 (1st Cir.1993) (Due Process Clause requires the sentencing judge to consider all available drug quantity evidence, including evidence conflicting with that introduced at trial.). Accordingly, our conclusion is based upon the drug quantity evidence advanced at trial.