U.S. v. Billmyer                      CR-94-29-JD   09/26/95
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE

United States of America

        v.                           Criminal No. 94-029-01, 04-JD

John W. Billmyer
Dennis R. Josleyn


                            O R D E R


        On June 1, 1995, the jury convicted defendants John Billmyer

and Dennis Josleyn of count II, conspiracy to commit mail fraud.

Josleyn was also convicted of the following offenses:  count I,

RICO; count III, conspiracy to commit mail fraud; and count IV,

mail fraud.  Before the court are Billmyer's motion for judgment

of acquittal under Fed. R. Crim. P. 29(c) or, in the alternative,

for a new trial under Fed. R. Crim. P. 33 (document no. 429);

Josleyn's motion for judgment of acquittal or a new trial

(document no. 432); and Josleyn's second motion for a new trial

and request for an order directing the attendance of a witness

(document no. 441).


                           Discussion

I.   Count II - Venue

        Billmyer and Josleyn assert that they are entitled to a

judgment of acquittal because venue was not proper in the

District of New Hampshire for the conspiracy charged in count II.[1]  Billmyer asserts that the government failed to adduce evidence to link Pedersen's conduct to Billmyer or to the overall count II conspiracy.  See, e.g., Memorandum of Law in Support of Motion for Judgment of Acquittal or, Alternatively, for a New Trial ("Billmyer's Memorandum") at 1, 14-22 ("There was no proof at trial that Billmyer had any knowledge of what Pedersen was doing, much less that Billmyer approved of Pedersen's activities, was involved in them, or shared profits with Pedersen").

When faced with a motion for judgment of acquittal under Rule 29, the court must determine "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that the defendant is guilty beyond a reasonable doubt."  United States v. Doe, 921 F.2d 340, 343 (1st Cir. 1990) (quoting Dirring v. United States, 328 F.2d 512, 515 (1st Cir.), cert. denied, 377 U.S. 1003 (1964)).  Following conviction, the court is required to preserve the jury's responsibility to weigh the evidence by considering "all of the evidence . . . in the light most favorable to the prosecution."  Id. at 344 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).

---

[1]Josleyn has adopted Billmyer's venue argument by reference.

The First Circuit recently caut0ioned courts not to consider "each piece of evidence in isolation" when ruling on a Rule 29 motion, adding that "it is for the jury, not the court, to choose between conflicting inferences." United States v. Olbres, No. 94-2123, 1995 WL 431143 at * 7 (1st Cir. July 26, 1995) (reinstating convictions following district court's entry of judgment of acquittal). The First Circuit reasoned that

> [u]nder the viewpoint principle, a jury charged with determining an accused's guilt or innocence is entitled to consider the evidence as a seamless whole. Jurors are not required to examine the evidence in isolation, for individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.

Id. (quotations omitted) (emphasis supplied).

The venue argument fails. As an initial matter, the court notes that the government was required to establish venue in New Hampshire by a preponderance of the evidence, a lighter burden of proof than that required for every other element of the crimes alleged.[2] Moreover, the Rule 29 standard is deferential to the

_____

[2]The court gave the jury the following venue instruction:

> Count II alleges that only one overt act occurred in New Hampshire. That overt act is found at paragraph 96(p) of the indictment and reads as follows:

> > In or about May, 1987, David Pedersen, an Assistant Zone Manager for American Honda, and other American Honda employees, caused an Acura dealership in Nashua, New Hampshire, to

jury's verdict and, as such, operates to the government's benefit.  In both his brief and in oral argument, defense counsel carefully digests the trial testimony, emphasizing the absence of a direct evidentiary link between Pedersen's and Bohlander's

_____

> be awarded to an automobile dealer, who shall
> be referred to as Dealer G.
>
> You may find that venue is proper in the district
> of New Hampshire only if you conclude that:
> (1) In May 1987 David Pedersen was a member of the
> same conspiracy as the defendants;
> (2) David Pedersen knowingly committed the above-
> described overt act;
> (3) the act was in furtherance of the conspiracy
> charged in count II; and
> (4) the occurred in the state of New Hampshire.
> The government has the burden of proving these
> facts set forth in paragraphs 1-4 above by the
> preponderance of the evidence rather than by the higher
> standard, beyond a reasonable doubt.  When I use the
> phrase "preponderance of the evidence," I mean that the
> government must prove that it is more probably so than
> not that the act occurred and occurred in New
> Hampshire.  Your determination of whether venue is
> proper in the district of New Hampshire is the <u>only</u>
> determination you will make in count II under the
> preponderance of the evidence standard.  <u>All</u> other
> determinations must be made according to the higher,
> "beyond a reasonable doubt" standard.
> Because the overt act found at paragraph 96(p) is
> the only overt act alleged to have occurred in New
> Hampshire, you must find that this act occurred in
> order to find either defendant guilty under count II.
> If you do not find by the preponderance of the evidence
> that this act occurred in New Hampshire, you must find
> both defendants not guilty.

<u>United States v. Billmyer and Josleyn</u>, Cr. 94-29-01, 04-JD, Jury
Instructions at 46-47.

4

conduct relative to the Nashua LOI and other acts committed in furtherance of the count II conspiracy.  In essence, Billmyer's argument invites the court to engage in a piecemeal dissection of the factual record in a manner similar to that rejected by the First Circuit in United States v. Olbres and the cases cited therein.  Based on its application of the Rule 29 standard, the court finds that the evidentiary record, when viewed as a seamless whole and taken in a light most favorable to the government, supports the jury's finding by a preponderance of the evidence that the overt act charged in paragraph 96(p) of the second superseding indictment occurred as alleged.

## II.  Multiple Conspiracies

### A.  Count II

Billmyer and Josleyn assert that they are entitled to a judgment of acquittal on count II or, in the alternative, a new trial under Rule 33, because the evidence established multiple conspiracies and not the single conspiracy charged in the second superseding indictment.[3]

---

[3]Billmyer's multiple conspiracy argument is advanced in support of his motion for a new trial.  Josleyn, who has adopted Billmyer's legal argument and memoranda by reference, advances the multiple conspiracies argument in support of his motion for judgment of acquittal and his motion for a new trial.

5

The First Circuit does not employ a "mechanical test through which a reviewing court can plumb the scope and contours of a given conspiracy or determine how many conspiracies may be said to exist." United States v. David, 940 F.2d 722, 734 (1st Cir.), cert. denied, 502 U.S. 989 (1991). Rather, the question of whether a conspiracy is multiple or single is one of fact which focuses on the "totality of the evidence and the permissible inferences therefrom." Id. at 732-34. In United States v. Cloutier, a drug case, the First Circuit announced several factors to be considered when making this fact-based determination. 966 F.2d 24, 28 (1st Cir. 1992).

> We consider: 1) when the drug [or other illegal]
> activity occurred; 2) the locations of the drug [or
> other illegal] activity; 3) the identities of the
> persons involved; 4) the co-conspirators' ends; 5) the
> means used to achieve those ends; and 6) the
> similarities (or differences) in the evidence used to
> prove the two conspiracies.

Id. at 28.

As counsel for Billmyer acknowledged in oral argument, the multiple conspiracies argument is analytically similar to his Rule 29 venue argument to the extent that both rest on the view that, as a matter of law, the conduct charged as an overall conspiracy actually encompassed numerous independent and disconnected schemes or patterns of conduct. Indeed, both defense counsel and counsel for the government argued that

6

application of the <u>Cloutier</u> factors to the factual record reveals the existence of multiple or single conspiracies, respectively.

The defense requested a jury instruction on multiple conspiracies and a detailed instruction on this issue was given to the jury.[4]  This instruction directed the jury to acquit the

_____

[4]The court gave the following multiple conspiracy instruction:

> In this case, the defendants contend that the government's proof fails to show the existence of only one overall conspiracy.  Rather, they claim that there were actually several separate and independent conspiracies with various groups of members.
> Whether there existed a single unlawful agreement, or many such agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in accordance with these instructions.
> When two or more people join together to further one common unlawful design, purpose, or overall plan, a single conspiracy exists.  On the other hand, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes.
> You may find that there was a single conspiracy despite the fact that there were changes in personnel by the termination, withdrawal, additions of new members, or in activities, or both, so long as you find that some of the co-conspirators continued to act for the entire duration of the conspiracy for the purpose charged in the indictment.  The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist.  It is not necessary that you find that the alleged co-conspirators joined the conspiracy at the same time or shared the same knowledge beyond their understanding, tacit or otherwise, that their illicit agreement existed.  Nor do the participants in a conspiracy need to have known all of their co-conspirators or to have participated at the same time in furtherance of their criminal venture.  What is essential is that the criminal goal or overall plan have persisted without

fundamental alteration otwithstanding variations in personnel and their roles.

In determining whether there was a single conspiracy or multiple conspiracies you may consider a wide range of factors such as: whether there was a common goal; the nature of the scheme; overlapping of participants in various dealings; the nature, design, implementation, and logistics of the illegal activity; the participants' method of operation; the relevant geography; and the scope of co-conspirator involvement.

If the goal or overall plan of a conspiracy is to embrace multiple crimes, then each conspirator must have knowledge or foresight of the conspiracy's multiplicity of objectives. If an individual agrees with others simply to commit a single crime and has no knowledge or foresight of the conspiracy's broader scope, that person is a member only of the narrower, one-crime conspiracy. Therefore, you must determine if the government has proven beyond a reasonable doubt that those individuals whom it alleges were members of the conspiracy charged in count II had knowledge or foresight of the conspiracy's broader scope. If not, you must acquit the defendants.

If you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership. If you find that there was not one conspiracy as charged in the indictment but one or more separate and independent conspiracies, then you must find the defendants not guilty.

Similarly, if you find that a particular defendant was a member of another conspiracy, and not the one charged in the indictment, then you must find that defendant not guilty of the conspiracy charged.

Therefore, what you must do is determine whether the conspiracy charged in the indictment existed. If it did, you then must determine who were its members.

8

defendants if it determined that the government failed to prove beyond a reasonable doubt the existence of a single count II conspiracy.  See <u>United States v. Billmyer and Josleyn</u>, Jury Instructions at 39-42.  The government introduced a considerable quantum of evidence relating to count II.  The evidence, viewed as a seamless whole and taken in a light most favorable to the government, included facts which could reasonably support a finding of a single conspiracy based on an application of the <u>Cloutier</u> criteria.  See 966 F.2d at 24.  Specifically, the government adduced evidence which reasonably supports, <u>inter alia</u>, findings of an interrelated group of conspirators who employed the same or similar methods and means to achieve the common goal of personal financial gain.  Although the court acknowledges that some of the evidence, such as Cardiges' failure to include Pedersen in a list of co-conspirators, may also support a finding of multiple conspiracies, <u>see</u> <u>United States v. Ocampo</u>, 964 F.2d 80, 83 (1st Cir. 1992), the court neither weighs the evidence nor chooses between conflicting inferences when ruling on a Rule 29 motion.  See,<u>e.g.</u>, <u>United States v. Olbres</u>,

---

<u>United States v. Billmyer and Josleyn</u>, Jury Instructions at 3942.

9

1995 WL 431143 * 7.[5] Rather, based on its application of the appropriate standard of review, the court concludes that the factual record supports the jury's finding beyond a reasonable doubt that the single conspiracy charged in count II of the second superseding indictment existed.

The multiple conspiracies argument is no more effective when advanced in support of the motions for a new trial under Rule 33. The court "may grant a new trial . . . if required in the interest of justice." Fed. R. Cr. P. 33. In the First Circuit, a "motion for a new trial is directed to the sound discretion of the trial court. Denial of such a motion will not be reversed, absent a miscarriage of justice or unless the evidence heavily preponderates against the verdict." United States v. Thornley, 707 F.2d 622, 626 (1st Cir. 1983) (citing United States v. Leach, 427 F.2d 1107, 1111 (1st Cir.), cert. denied, 400 U.S. 829 (1970)).

The multiple conspiracies argument was a fact-intensive defense skillfully presented to the jury along with an

---

[5]Likewise, although the evidence concerning Pedersen's efforts to conceal his unlawful conduct from other co-conspirators may manifest an intent not to join a common enterprise, such testimony is also consistent with the government's theory that silence was a shared method and means of the conspiracy.

10

appropriate instruction concerning the applicable law. The court has determined, <u>supra</u>, that the factual record supports, rather than preponderates against, the jury's finding beyond a reasonable doubt that the single conspiracy alleged in count II existed. Accordingly, the defendants have failed to present sufficient justification for the court to find that the interest of justice requires a new trial.

### B. Counts I and III

Josleyn asserts that he is entitled to a judgment of acquittal on counts I and III because "the evidence is insufficient to establish that the conspiracies charged in Counts I . . . and III of the indictment were single conspiracies." In support of the motion Josleyn relies principally on Billmyer's legal argument and memoranda even though Billmyer was not indicted on these counts.

The Rule 29 motion on count I lacks support in either fact or law. Count I of the second superseding indictment did <u>not</u> allege a conspiracy and, as such, the jury was never required to find the existence of a single conspiracy in order to convict. Rather, count I alleged a substantive violation of the RICO statute. However, to the extent the motion is based on the government's failure to prove one of the five RICO elements,

11

which could include the failure to prove one of the three elements of the predicate acts of mail fraud, the court denies the motion based on a consideration of the entire factual record in accordance with the appropriate Rule 29 standard. See e.g., United States v. Olbres, 1995 WL 431143 at * 7.

The Rule 29 motion addressed to count III based on the existence of multiple conspiracies also fails. The conspiracy alleged in count III was not nearly as broad in scope, participants, or time as that alleged in count II. As charged, the count III conspiracy embraced the conduct of Josleyn, Cardiges, and others relative to the direct mail advertising scheme and the sales training seminar ("STT") scheme from in or about 1989 until in or about June 1992. The factual record, viewed as a seamless whole and taken in a light most favorable to the government, included evidence which could reasonably support a finding of a single conspiracy based on application of the Cloutier criteria. See 966 F.2d at 24. Specifically, the government adduced evidence which supports, inter alia, findings of an interrelated group of conspirators who employed the same or similar methods and means to achieve the common goal of personal financial gain. The court notes that Cardiges testified over the course of several days concerning his, Josleyn's, and Garey & Associates' direct involvement in both the advertising and the

12

STT schemes.  The fact that the same conduct also may be viewed as comprising two separate conspiracies perpetrated by similar means and participants, <u>i.e.</u>, one conspiracy involving the ad campaign and the other involving STT, does not require entry of a judgment of acquittal because the court neither weighs the evidence nor chooses between conflicting inferences when ruling on a Rule 29 motion.  <u>See</u> <u>e.g.</u>, <u>United States v. Olbres</u>, 1995 WL 431143 at * 7.  Rather, based on its application of the appropriate standard of review, the court concludes that the factual record supports the jury's finding beyond a reasonable doubt that the single conspiracy charged in count III existed.

## III. Misjoinder and Co-Conspirator Hearsay

Billmyer asserts that he is entitled to a new trial because of the misjoinder of count II with the other counts charged in the second superseding indictment.  Billmyer also asserts that he is entitled to a new trial because of the erroneous admission of hearsay testimony of co-conspirators.  Josleyn again has adopted his co-defendant's legal argument and memoranda by reference.

Both the misjoinder argument and the hearsay argument rest in large part on the defendants' theory that the evidence related to count II established the existence of multiple conspiracies.  Thus, as an initial matter the arguments are imperiled by

13

the court's conclusion, supra, that the factual record supports the jury's finding beyond a reasonable doubt that the single conspiracy charged in count II existed. Indeed, Billmyer tacitly acknowledges that the existence of a single conspiracy vitiates the misjoinder argument by noting that "joinder may be proper in the presence of an over-arching conspiracy." Billmyer's Memorandum at 24 (citing United States v. Boylan, 898 F.2d 230, 245 (1st Cir.), cert. denied, 498 U.S. 849 (1990)). Likewise, with regard to the admission of the hearsay statements of co-conspirators, Billmyer notes that

> if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible.

Id. (quoting United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977)).

The court's analysis of the intimate relationship between the multiple conspiracies theory and the misjoinder and co-conspirator hearsay arguments does not in itself dispose of the instant motions under Rule 33. Rather, the court further notes that the defendants did not suffer the level of prejudice that would require a new trial in the interest of justice. The jury was instructed to consider each count and each defendant separately. See United States v. Billmyer and Josleyn, Jury

14

Instructions at 14-15. Likewise, the jury was instructed that they could not consider the inculpatory acts and statements of co-conspirators without first concluding that the acts or conduct were made by members of the conspiracy in furtherance of the conspiracy. See id. at 48-49. In addition, counsel for both the government and for the defendants segregated the evidence to avoid prejudicial spillover from defendant to defendant and from count to count. Where appropriate, exhibits were identified so as to remind the jury against which defendant they were to be considered. In addition, instructions were given to the jury from time to time during the trial to consider certain testimony only as to one defendant or the other. In light of the above, the court finds that the defendants are not entitled to a new trial under Rule 33.

## IV.  Newly Discovered Evidence

Josleyn asserts that he is entitled to a new trial because evidence discovered following his conviction, if presented to the jury, would have resulted in acquittal. He argues that prosecution witness Robert Rivers' trial testimony directly contradicted testimony Rivers provided in "another proceeding

15

when it so served his interest."[6]  Josleyn reasons that this evidence would have had a tremendous negative effect on Rivers' credibility and, in turn, "upon the jury's view of the credibility of other governmental witnesses who parroted the perjury of Rivers."

In the First Circuit, for a defendant to prevail on a motion for a new trial based upon newly discovered evidence, four elements must be satisfied:

> 1)   the evidence was unknown or unavailable to defendant at the time of trial;
>
> 2)   the failure to discover the evidence was not due to a lack of diligence on the part of defendant;
>
> 3)   the new evidence must be material; and
>
> 4)   the evidence would probably produce an acquittal upon retrial of defendant.

United States v. Ortiz, 23 F.3d 21, 27 (1st Cir. 1994) (citing United States v. Benavente Gomez, 921 F.2d 378, 382 (1st Cir. 1990); United States v. Wright, 625 F.2d 1017, 1019 (1st Cir.

---

[6]Josleyn asserts that Rivers contradicted his trial testimony by stating in a sworn affidavit that

> I obtained ownership interest in a number of Honda dealerships [sic] It [sic] clear to me was my belief that Honda's Presidents, Chino, Munekuni, and Mr. Amemyia were cognizant of the improper activities which were occurring within American Honda Sales force.

Josleyn's Supplement to Motion for Judgment of Acquittal or Alternatively Motion for New Trial at 4.

16

1980)).  In the context of a motion for a new trial, impeachment evidence or cumulative evidence generally is not considered material for purposes of the third element.  E.g., Barrett v. United States, 965 F.2d 1184, 1195 (1st Cir. 1992) (listing cases).  The court must deny the motion for a new trial if any one of these four elements is lacking.  Id. (citing United States v. Natanel, 938 F.2d 302, 313 (1st Cir. 1991), cert. denied, 112 S. Ct. 986 (1992)).

The post-conviction discovery of the Rivers affidavit, containing certain apparently inconsistent testimony, does not warrant a new trial.  First, Rivers testified at length during trial and, to the extent the defense was aware that Rivers had testified on other occasions, it had the opportunity to elicit inconsistencies based on the prior testimony.  Likewise, to the extent the defense was not aware that Rivers had testified on other occasions, such as in the affidavit at issue, the existence of such prior testimony itself could have been elicited through diligent cross-examination.

Second, even without knowledge of Rivers' inconsistent testimony in other proceedings, the defense repeatedly elicited testimony from other witnesses, such as Cecil Proulx and David Power, concerning Japanese management's knowledge of wrongful conduct.  Accordingly, Josleyn's bald assertion that additional,

17

and most likely cumulative, testimony on this point would have caused the jury to adopt the defense theory of the case is unavailing.

Third, although Rivers was an important government witness, the jury convicted Josleyn after listening to and gauging the credibility of countless other witnesses during a lengthy trial. Thus, Josleyn strains reason to suggest now that a different verdict would have resulted had the jury found Rivers to be a less credible witness, particularly in view of the overwhelming evidence of Josleyn's guilt.

Fourth, the motion claims that the newly discovered evidence is exculpatory in that it would have undermined Rivers' credibility. Impeachment evidence is not considered material for purposes of determining whether to grant a motion for a new trial.


V.   Prosecutorial Misconduct

Josleyn next asserts that he is entitled to a new trial because various instances of prosecutorial misconduct have violated his constitutional right to due process. Josleyn asserts the government wrongfully:

> (1)  elicited false testimony from Cardiges that Cardiges had personally reviewed all government files and, in the course of this review, found nothing to implicate Japanese

18

management or to suggest that Japanese management knew of or condoned wrongful conduct;

(2) failed to retract the testimony or "inform the jury that it had previously adduced false testimony"; and

(3) exacerbated the effect of Cardiges' false testimony by personally vouching for "the propriety of the question and answer" during rebuttal argument.[7]

The court considers several factors when determining whether instances of prosecutorial misconduct have "so poisoned the well that a new trial is required." United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994) (quotations omitted). They are:

(1) The severity of the misconduct;

(2) the context in which it occurred;

(3) whether the judge gave any curative instructions and the likely effect of such instructions; and

(4) the strength of the evidence against the defendant.

---

[7]Inexplicably, Josleyn has failed to identify which portions of the prosecutor's rebuttal he argues constituted an error of constitutional dimension. Based on its own review of the transcript, the court believes that Josleyn is objecting to the following remarks of Attorney Connolly:

Now, there was a lot of suggestions of foul play in this case. I want to say this. I'm a married person with a family, and I go home at night with a sound conscience. I have worked very hard on this case. Mr. Feith has worked very hard on this case. Mr. Mulvaney and Ms. Roux have worked very hard on this case. And we are very proud of what we have done. We have nothing to be ashamed of.

Trial Transcript, May 18, 1995, afternoon session at 83.

Id. (citing cases).  In general, prosecutors may neither vouch for their witnesses nor appeal to the jury to act in a manner other than as a dispassionate arbiter of the facts.  Id. at 573 (citations omitted).  On appeal, the First Circuit reviews a prosecutor's allegedly improper closing argument for plain error if the defense failed to interpose a contemporaneous objection to the commentary.  United States v. Ortiz, 23 F.3d at 26.

The allegations of prosecutorial misconduct do not warrant a new trial.  First, the court promptly addressed concerns over Cardiges' inaccurate or misleading testimony when those concerns were voiced by counsel at sidebar during re-cross examination.  The court found that the government's examination of Cardiges constituted "misleading question and answering" which left the jury with the impression that the government's files did not contain materials suggestive of Japanese management's knowledge of wrongful conduct.  Trial Transcript, April 6, 1995, morning session at 117, 121-23.  The court undertook to cure the misimpression -- over the government's strenuous objection -- by permitting counsel for Josleyn to use hearsay material during his cross examination of Cardiges.  See id. at 124-30; Trial Transcript, April 6, 1995, afternoon session at 3-18.  Defense counsel took full advantage of its opportunity to cross examine Cardiges and, in particular, enjoyed considerable latitude when

20

questioning him on his prior testimony concerning the contents of the government's files. See Trial Transcript, April 6, 1995, afternoon session at 18-50.

Second, Cardiges' credibility was further compromised by Cecil Proulx's testimony that he personally submitted to the government written materials, including copies of correspondence and memoranda, concerning Japanese management's knowledge of conduct violative of company policy.

Third, the defense emphasized the government's misleading examination of Cardiges during its closing argument. In this sense, the defense effectively co-opted potentially prejudicial testimony to its own advantage.

Fourth, Josleyn was convicted by a jury which considered many weeks of incriminating testimony and boxes of exhibits. This volume of evidence invariably mitigates whatever prejudicial taint arose from the government's line of questioning of any one cooperating witness.

Fifth, Connolly's statement in rebuttal did not create undue prejudice. Connolly should not have made the objectionable remarks. They were improper to the extent that Connolly commented on the government's probity in trying the case. The comment may have tended to bolster the government's credibility in a very generalized way and, also in a generalized way, may

21

have bolstered the credibility of government witnesses. Nonetheless, Connolly neither directly vouched for the veracity of the government's witnesses, nor made statements of the sort generally considered to prejudice the defense in any appreciable way, i.e., no burden shifting, no misstatements of fact or law, no allusions to evidence not admitted at trial, and no inflammatory arguments concerning the role of the jury.

Finally, the defendant failed to make a contemporaneous objection to the comment.[8] An objection would have alerted the court to the perceived problem and would have allowed the court the opportunity to take curative action.

Having weighed and considered the defendant's assertions of prosecutorial misconduct, and having considered the overwhelming weight of evidence introduced against Josleyn, the court finds that any prejudice was not undue and did not create the level of unfairness necessary to require a new trial.

---

[8]Josleyn's failure to object to the statements he now asserts require a new trial is particularly conspicuous given the defense's appropriate and timely objections to other commentary made during the course of the government's closing remarks, i.e., objections made to statements concerning the redaction of materials contained in the Sherry Cameron legal file. See Trial Transcript, May 18, 1995, afternoon session at 87-88.

<u>Conclusion</u>

For the foregoing reasons, Billmyer's motion for judgment of acquittal under Fed. R. Crim. P. 29(c) or, in the alternative, for a new trial under Fed. R. Crim. P. 33 (document no. 429); Josleyn's motion for judgment of acquittal or a new trial (document no. 432); and Josleyn's second motion for a new trial and request for an order directing the attendance of a witness (document no. 441) are denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

September 26, 1995

cc:  David W. Long, Esquire
     Paul J. Twomey, Esquire
     U.S. Attorney
     U.S. Probation
     U.S. Marshal

23