<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2392     

                         UNITED STATES,
                           Appellee,

                               v.

                 GUILLERMO SCANTLEBERRY-FRANK,
                  A/K/A GILLERMO SCANTLEBRURY,
                  A/K/A GUILLERMO SCANTLEBURY,
                 A/K/A GUILLERMO SCANTLEBERRY,
                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

        [Hon. Nathaniel M. Gorton, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,
Wellford, Senior Circuit Judge,
                   and Lynch, Circuit Judge.

                     _____________________

    Tina Schneider, by appointment of the Court, on brief, for
appellant.
    Antoinette E.M. Leoney, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief, for
appellee.

                      ____________________

                       October 23, 1998
                      ____________________

         TORRUELLA, Chief Judge. Defendant-appellant, Guillermo
Scantleberry-Frank ("Scantleberry"), appeals his conviction of
illegal reentry into the United States after deportation, in
violation of 8 U.S.C.  1326.  On appeal, Scantleberry argues:  (1)
that his rights under the Speedy Trial Act, 18 U.S.C.  3161, were
violated; and (2) that there was insufficient evidence to support
his conviction.  For the following reasons, we affirm.  
                          BACKGROUND  
         In November 1979, Scantleberry, a citizen of Panama,
illegally entered the United States at New York City.  On June 4,
1987, the United States Immigration and Naturalization Service
("INS") found Scantleberry at the Massachusetts Correctional
Institution at Concord where he was serving a state sentence on
unrelated charges.  On November 2, 1992, Scantleberry was deported
to Panama after completing his sentence in the Massachusetts prison
system. Before Scantleberry boarded the plane to Panama, an INS
Deportation Officer fingerprinted his right thumb.  
         On January 7, 1997, INS Deportation Officers and
Massachusetts State Police Officers found Scantleberry in
Worcester, and placed him under arrest for illegally re-entering
the country after deportation.  After he was taken into custody,
the INS took Scantleberry's fingerprints, for comparison with the
right thumbprint taken prior to Scantleberry's deportation to
Panama.  Expert testimony submitted at trial determined that the
thumbprints were identical.
         On January 15, 1997, Scantleberry was indicted for
illegal re-entry into the United States after deportation.  On
January 17, 1997, he appeared in court for his initial appearance
and was arraigned on the indictment.  On January 21, 1997, the
magistrate judge issued an order of excludable time pursuant to the
Speedy Trial Act commencing on January 17, 1997 -- the date of the
defendant's initial appearance and arraignment -- and concluding on
February 21, 1997 -- the date by which the government was directed
to file its responses to any pretrial discovery motions.  
Additionally, the magistrate judge issued a preliminary status
report to the district court, stating that, assuming no further
allowances for excludable time, this case had to be tried on or
before May 2, 1997.
         On April 3, 1997, the district court held a
pretrial/status conference at which the possibility of a negotiated
plea was discussed.  In response to the court's attempt to set a
trial date, the government stated that it was unavailable between
April 13 and April 27, and on April 29.  Defendant's counsel stated
that she was unavailable between April 29 and May 12.  Based on
these representations, the district court set the trial date for
May 12, 1997.
         On May 8, 1997, the defendant filed a motion to dismiss
the indictment on the ground that his trial had not commenced
within the time required under the Speedy Trial Act, and on May 19,
1997, the government filed a motion in opposition.  On May 9, 1997,
the defendant's counsel filed a motion for a continuance of the May
12 trial date on the ground that she was engaged in trial on
another unrelated matter.  On May 22, 1997, the district court
issued written findings pursuant to a Speedy Trial Order, and
denied the defendant's motion to dismiss the indictment without a
hearing.  In its May 22, 1997 Speedy Trial Order the district court
reset the trial for June 16, 1997, and excluded the period from
April 3, 1997 until May 22, 1997.  On June 16, 1997, the day
Scantleberry's trial commenced, the defendant filed a motion for
reconsideration of the motion to dismiss and a second motion to
dismiss the indictment under the Speedy Trial Act.  The district
court orally denied both motions, and entered a further order
excluding the time from May 12, 1997, until June 16, 1997.  
                            ANALYSIS
I.  Speedy Trial Act Claim
         The Speedy Trial Act ("STA"), 18 U.S.C.  3161, is
designed "to protect a defendant's constitutional right to a speedy
. . . trial, and to serve the public interest in bringing prompt
criminal proceedings."  United States v. Santiago-Becerril, 130
F.3d 11, 15 (1st Cir. 1997) (quoting United States v. Saltzman, 984
F.2d 1087, 1090 (10th Cir. 1993)).  The STA provides that the
government must bring a criminal defendant to trial no more than
seventy days after the later of the filing date of the information  
or indictment, or the date on which the criminal defendant first
appears before a judicial officer of a court in which the charge is
pending.  See id.  (citing 18 U.S.C.  3161(c)(1)).  In calculating
the seventy days, the STA excludes certain time periods.  See 18
U.S.C.  3161(h)(1)-(9); see also Santiago-Becerril, 130 F.3d at
15.  If a criminal indictment is not brought to trial within the
seventy-day time limit imposed by  3161(c)(1), as extended by
operation of  3161(h)(1)-(9), the penalty provisions of the STA
mandate that "the information or indictment shall be dismissed on
motion of the defendant."  18 U.S.C.  3162(a)(2).
         Scantleberry argues that the district court erred in
denying his motion to dismiss the indictment.  He contends that the
period between April 3 (the date of the pretrial conference) and
May 8 (the date the motion to dismiss was filed) was improperly
excluded from the speedy trial calculus.  As a result, the delay in
his being brought to trial added up to more than the number of
statutorily allowable days.  In response, the government asserts
that, at worst, only sixty-five non-excludable days passed before
Scantleberry was brought to trial.
         We find no error in the district court's refusal to
dismiss the superseding indictment.  This Court reviews the
disposition of a STA issue for clear error as to factual findings
and de novo as to legal rulings.  See Santiago-Becerril, 130 F.3d
at 15; United States v. Rodrguez, 63 F.3d 1159, 1162 (1st Cir.
1995).  We conclude that fewer than seventy non-excludable days
elapsed before Scantleberry was brought to trial.
         A.  April 3, 1997 to May 8, 1997
         In holding that the period from April 3 to May 8 was
excludable from the speedy trial calculus under  3161(h)(1), the
district court stated in its Speedy Trial Order that at the April 3
pretrial/status conference, "counsel for Scantleberry announced on  
several occasions that Scantleberry would plead guilty and that a
trial would be unnecessary."  As a result, the district court
excluded the time period commencing from the date on which
Scantleberry allegedly informed the court of his intention to plead
guilty -- April 3 -- until the date he indicated that he was not
going to plead guilty -- May 8 -- the date on which he filed the
motion to dismiss.
         Scantleberry argues that the district court erred in
excluding that time period from the speedy trial calculus.  He
asserts that the transcript of the conference clearly indicates
that his counsel's only intention was to discuss the government's
offer of a plea bargain.  Scantleberry cites the following exchange
between the district court and his counsel:

                   THE COURT:    We'll hope that the matter is
                                           resolved. If it isn't, we'll
                                           see you on the 12th of May.
                    
                   [COUNSEL FOR SCANTLEBERRY]:
                                        We will notify the Court if we
                                        reach an agreement.
                    
                   THE COURT:           Yes.  You can get a date for a
                                        Rule 11 Hearing if that's
                                        necessary.
                    
         April 3, 1997 Status Conference, Tr. 6-7.In Scantleberry's view,
only the possibility, and not the certainty of a change of plea was
presented to the district court.
        The government argues that the time was properly excluded
by the district court because Scantleberry's counsel created the
expectation that there would be a change of plea and that
additional time was necessary to complete negotiations.  It cites
the following exchange between the district court and counsel:

                   [GOVERNMENT]: [T]he government has presented
                                           a proposed plea agreement to
                                           Miss Thompson [counsel for
                                           Scantleberry], and Miss
                                           Thompson, I'm sure, can speak
                                           on the point.  She is in the
                                           process of trying to make
                                           arrangements with her client to
                                           go over the agreement, and
                                           we're hopeful that, as opposed
                                           to a trial date, that we'll
                                           actually be looking for a Rule
                                           11 hearing date.
                    
                   THE COURT:              All right. Miss Thompson.
                    
                   MS. THOMPSON:           Yes. I do think that's
                                           accurate, Judge, that we
                                           probably are looking for a Rule
                                           11 hearing date.
                    
         April 3, 1997 Status Conference, Tr. 1-2.

        Secondly, the government argues that the trial date was
set for May 12, 1997, largely in order to accommodate defense
counsel who also had other trial dates.  It argues that at the
April 3 status conference, the government told the court that it
was unavailable between April 13 and April 29, while defense
counsel stated that she was unavailable between April 29 and
May 12.  The transcript of that discussion reads as follows:
                    
                   [GOVERNMENT]:           I don't see more than a day or
                                           two for trial days.
                                           Unfortunately, though, there
                                           are two weeks in the end of
                                           April where I have to be in
                                           Washington, the   beginning on
                                           the 13th through the 27th of
                                           April.  And on the 29th I'm in
                                           court in Boston.
                    
                   THE COURT: On the 29th?
                    
                   [GOVERNMENT]:           Yes, of April.
                    
                   THE COURT:              But just for that day? . . .
                                           What about the first week of
                                           May?
                    
                   [GOVERNMENT]:           First week of May I look pretty
                                           good.
                    
                   [THE COURT]:            Miss Thompson.
                    
                   MISS THOMPSON:          I start   I know you've heard
                                           this from me before, Judge, the
                                           last time I was here.  I have a
                                           murder trial starting May 5th.  
                                           I'm sure that it's going to go.  
                                           I know that this trial is going
                                           to happen . . . . I'm expecting
                                           to be tied up that week [the
                                           week of May 5th].  And the
                                           following week, however, the
                                           week of May 12th, I think that
                                           I have a pretty open calendar
                                           that week.  The week preceding
                                           the first week in May, I have a
                                           rape trial starting on
                                           April 29th that I expect
                                           probably will take two or three  
                                           days to try.
                    
                   THE COURT:              What about May 12th, Monday,
                                           May 12th?
                    
                   MS. THOMPSON:           May 12th, assuming that my
                                           trial ends as I anticipate,
                                           would be fine.
          
April 3, 1997 Status Conference, Tr. 3-4.
        The government contends that since defense counsel
informed the court that she would not be available between April 29
and May 12, those days between April 29 and May 12 should be
excluded from the  speedy trial calculus.  It asserts that even if
the court accepts the defendant's argument that no plea
negotiations were underway, this calculation would leave the total
of non-excludable days at sixty-five, which is within the total
number of days permitted by the STA.
        We need not and do not reach the issue of the STA status  
of a period of plea negotiations.  Assuming the period of plea
negotiations is within the running of the STA clock, there is still
no STA violation.  Both the court and the government were prepared
to go to trial by April 30th, at day 65 of the 70 day period, but
the defense counsel was not, due to her own scheduling conflicts.  
A continuance was granted to accommodate her schedule.
        In United States v. Pringle, 751 F.2d 419, 432 (1st Cir.
1984), this Court held that scheduling conflicts constitute
legitimate grounds for granting a continuance under  3161(h)(8).  
One of the factors to be considered by the court in granting a
continuance is "[w]hether the failure to grant such a continuance
. . . would unreasonably deny the defendant or the Government
continuity of counsel . . . ."  18 U.S.C.  3161(h)(8)(B)(iv).
        Because the continuance was granted to aid defense
counsel, and maintain continuity of counsel, the period between
April 29, 1997, and May 8, 1997, is excludable.  Cf. Santiago-
Becerril, 130 F.3d at 17 ("By notifying the court of his
availability for trial, defense counsel may be said to have
impliedly moved for a new trial date.  The court acted on the
implied motion . . . by setting a new trial date . . . . Motions
that do not require a hearing may toll the seventy-day time limit
for up to thirty days.").   
        To hold otherwise would be to subvert the purpose of the
STA, and allow defense counsel to "sandbag" the district court.  
Under the appellant's line of argument, a defense counsel could
cooperate with the district court in setting a trial date without
informing the court that by granting certain continuances, the STA
would be violated.  Defense counsel cannot have it both ways.  
Either she must agree that the continuance granted for her benefit
be excluded from STA consideration, or she must object to the
continuance.  To permit defense counsel to have both the
continuance and the time included in the STA calculus is
impermissible.  Cf. Ortiz v. United States, 23 F.3d 21, 28 (1st
Cir. 1994) (finding no Speedy Trial Act violation where defense
counsel raised no objection to trial continuance).
II.  Sufficiency of the Evidence
        Scantleberry contends that the evidence presented at
trial was insufficient to prove that he did not have the express
consent of the Attorney General to reapply for admission to the
United States.
        We review the sufficiency of the evidence as a whole, in
a light most favorable to the verdict, taking into consideration
all reasonable inferences.  We do not reweigh the credibility of
the witnesses.  Rather, we resolve all credibility issues in favor
of the verdict.  See United States v. Hahn, 17 F.3d 302 (1st Cir.
1994), cited in United States v. Reyes-Medina, No. 94-1923, 1995 WL
247343 (1st Cir. April 25, 1995).  "The evidence may be entirely
circumstantial, and need not exclude every hypothesis of innocence;
that is, the factfinder may decide among reasonable interpretations
of the evidence."  Id. (quoting United States v. Batista-Polanco,
927 F.2d 14, 17 (1st Cir. 1991)
        Sections 1326(a) and (b)(2) provide in relevant part
that:  1) any alien; 2) whose deportation was subsequent to a
conviction for commission of an aggravated felony; 3) who enters or
attempts to enter, or is at any time found in, the United States;
4) without the express consent of the Attorney General for such
entry; 5) shall be fined and/or imprisoned.  See 8 U.S.C.  1326.  
Scantleberry challenges only the sufficiency of the evidence on the
fourth element: reentry without the express consent of the Attorney
General for such entry.
        He argues that in its case-in-chief, the government
presented a Certificate of Nonexistence of Record, which stated
that no record was found of any application for permission to
reenter made by "Guillermo Scantleberry, also known as Guillermo
Scantleperry-Frank and Guillermo A. Scantleberry."  The original
warrant authorizing the deportation of the defendant in 1992
referred to the defendant as "Scantleberry, Guillermo F., aka:
Scantleberry-Frank, Guillermo."  The defendant was subsequently
indicted as "Guillermo Scantleberry-Frank, a/k/a Gillermo
Scantlebrury, a/k/a Guillermo Scantlebury, a/k/a Guillermo
Scantleberry."  Scantleberry argues that because the government did
not examine its records under the right name, he was entitled to a
judgment of acquittal.  In sum, his claim is that a reversal is
warranted in this case because the evidence presented at trial
failed to show that the INS ever examined its records for an
application from Guillermo F. Scantleberry or Guillermo
Scantleberry-Frank, the names under which the defendant had been
previously deported.  
        At trial, the government introduced into evidence a
certified INS Certificate of Nonexistence of Record, signed by the
Acting Chief of the Records Services Branch for INS, to demonstrate
that the defendant had never applied for or received permission
from the Attorney General of the United States to reenter the
country after he had been deported in November 1992.  The
Certificate of Nonexistence stated that a diligent search had been  
conducted of the INS's automated and nonautomated records systems
under the names "Guillermo Scantleberry," as well as "Guillermo
Scantleperry-Frank," and "Guillermo A. Scantleberry."
    In addition, the government submitted evidence relating
to Scantleberry's INS Alien File Number ("A-File Number"), A28 926
749, on the certification attached to the Certificate of
Nonexistence.  An INS A-File identifies an individual by name,
aliases, date of birth, and citizenship, and all records and
documents related to the alien are maintained in that file.  
Testimony elicited at trial revealed that a government agent had
provided the defendant's A-File number, aliases, date of birth,
country of birth, and date, time, and place of deportation, when he
made the request to have the INS's records searched for information
concerning whether the defendant had ever applied for permission to
reenter the country.  The jury could have reasonably inferred that
the defendant's unusual surname combined with key information
provided by the government agent allowed the INS to conduct a
thorough search of its records, and that any application made by
the defendant seeking permission to reenter the country under any
of his aliases would have been discovered.
    Finally, the defendant signed "Guillermo Scantleberry" on
the September 23, 1992, warrant of deportation, when he placed his
right thumbprint on the warrant.  In addition, evidence submitted
at trial showed that the defendant used the name "Guillermo
Scantlebery" when he signed his name on the ten-print fingerprint
card during his arrest for illegal reentry on January 7, 1997. Both
of the names used by the defendant were searched in the INS
records, which showed no consent to reenter had been given.
    Given the defendant's conduct and the thorough search
conducted by the INS using the defendant's surname and the A-File
Number, the government's evidence was sufficient for the jury to
find beyond a reasonable doubt that Scantleberry had not obtained
the express consent of the Attorney General to reapply for
admission to the United States after his deportation, nor had the
prerequisite permission been granted.
                           CONCLUSION
    For the reasons stated in this opinion, we affirm the
judgment of the district court.

</body>

</html>